Commonwealth *v.* Baker, Appellant.

Submitted September 15, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*John W. Packel*, Assistant Defender, and *Vincent J. Ziccardi*, Defender, for appellant.

*Louis A. Perez, Jr.*, and *Milton M. Stein*, Assistant District Attorneys, *James D. Crawford*, Deputy District Attorney, *Richard A. Sprague*, First Assistant District

Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., November 11, 1971:

This is an appeal from the lower court's refusal to grant appellant's motion for new trial or arrest of judgment following conviction, after jury trial, of the crime of robbery.

The circumstances surrounding the robbery, as placed in evidence by the Commonwealth,[1] were as follows:

At about 2:00 p.m. on Friday, July 17, 1970, Miss Miriam McCurdy, an employee of the Pennsylvania Department of Welfare, was returning to her office at 2925 N. Broad Street in Philadelphia. Shortly before, Miss McCurdy had gone to a nearby Central Penn National Bank Office to cash a personal check; the money had been placed in a Central Penn envelope. At the entrance to the Department of Public Assistance Office, Miss McCurdy began a conversation with a fellow employee, Mrs. Viola Byrd, during which Miss McCurdy remarked that a "man across the street appeared to be ill." Suddenly, Miss McCurdy saw this man run toward them and reach for the envelope containing the money which she was holding in her hand. Miss McCurdy grabbed the envelope with her other hand and looked at the man's face to see if she could recognize him. During the struggle, Miss McCurdy was thrown to the ground and lost control of the envelope. As the man started to flee, he lost one of his shoes. Mrs. Byrd picked up the shoe and joined the pursuit. A motorist attracted a passing police wagon. Following the directions given by several bystanders, Officer Charles Lor-

---

[1] For purposes of this appeal we must read the evidence in the light most favorable to the Commonwealth with all circumstances or contradictions therein resolved in its favor: *Commonwealth v. Rankin*, 441 Pa. 401 (1971).

enz and his partner went to a dead-end alley located near 1338 Toronto Street. The officers entered a partially boarded-up vacant house at this address. Approximately ten feet from the stairs leading to the second floor, Officer Lorenz found another shoe, the mate to the one Mrs. Byrd picked up.

The officer then heard the sound of movement upstairs and ran to the backyard, where he saw the appellant hanging from the second story window. The appellent fell and was arrested. He was not wearing any shoes.

Officer Lorenz reached the rear yard and recovered two envelopes. One of them contained the mark "CM". Miss McCurdy testified she received from the bank an envelope marked "CM", but could not positively identify the envelope as the one taken from her.

Mrs. Byrd testified that she gave the shoe she found to Miss McCurdy. Miss McCurdy testified that she saw Mrs. Byrd pick up the shoe and that Mrs. Byrd gave her the shoe and that she in turn gave it to the police. Officer Lorenz identified the two shoes, the right one as the one he received from Miss McCurdy, and the left one as the one he found in the vacant house.

As the trial, both Miss McCurdy and Mrs. Byrd identified the appellant as the man who had robbed Miss McCurdy.

Prior to trial appellant had sought to suppress the identification testimony of Miss McCurdy and Mrs. Byrd on the ground that their identification of appellant as the robber was first suggested to them by, and was grounded on, an unlawful out-of-court identification from mug shots presented to them several days after the robbery by appellant's parole officer, in the absence of counsel, on the same day defendant had been seen by Miss McCurdy and Mrs. Byrd in the Department of Public Assistance Office in which the witnesses were employed. The court below refused to sup-

press the witnesses' testimony and we affirm that refusal.

The Commonwealth had the right to establish that the witnesses' in-court identification was based on their observations of the appellant, independent of any prior unlawful identification: *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926 (1967); *Commonwealth v. Hall*, 217 Pa. Superior Ct. 218 (1970).

At the hearing on the motion to suppress the evidence and at the trial, the in-court identification of the appellant by both Miss McCurdy and Mrs. Byrd was positive, unqualified and expressly stated by them to be based on their observations of the appellant during the ample opportunity afforded them by virtue of the circumstances of the robbery, these witnesses having watched appellant prior to the robbery and during the course of it.

The fact that at the preliminary hearing Miss McCurdy was not positive in her identification did not call for a suppression of her testimony at time of trial. In view of her explanation at the hearing on the motion to suppress, "I was a little confused when I saw this man full faced. I wasn't sure, I was only sure when I saw his profile and that made me hesitate," there arose a matter of credibility to be considered by the jury at the time of trial. The trial court did so present the issue to the jury for its determination with the following correct instructions: "Where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify a defendant on one or more prior occasions, it is my duty to warn you that the testimony as to identity must be received with caution and carefully and clearly scrutinized. But, where the opportunity for positive identification is good and the witness is positive in his identification and his identifica-

tion is not weakened by prior failure to identify, but remains even after cross-examination positive and unqualified, the testimony as to identification need not be received with caution. Indeed, positive testimony as to identity may be treated as the statement of a fact.

"The credibility of those witnesses and the weight to be given their identification is also exclusively for you members of the jury."

Furthermore, Mrs. Byrd, the other eye-witness, had been positive in her identification of the appellant as the robber at the preliminary hearing, as well as the hearing on the motion to suppress and later at the trial.

At the hearing on the motion to suppress, both Miss McCurdy and Mrs. Byrd testified as to having recognized appellant a few days after the robbery when he made a visit to the Department of Public Assistance Office where they were employed, but they hesitated at that time in acknowledging their recognition because they could not believe that he would or could return to the scene of the crime having been placed under arrest a few days before.

It was on that same day as appellant's visit to the Department of Public Assistance Office that the probation officer also came to the witnesses' office to show them the mug shots of appellant. It is appellant's contention that the identification of appellant from those mug shots, on the same day they saw him in their office, was suggestive and tainted all of the witnesses' identification of appellant thereafter since they had not previously identified him. However, this claim that the identification of the appellant by the witnesses was suggestive by his coincidental appearance in their office on the same day the mug shots were shown to them was refuted by the witnesses' positive in-court identification specifically stated by them to be based on their observations at the time of the robbery.

Appellant would seek to place emphasis on the fact that the mug shot identification was the first express identification of the appellant. It is true that at the suppression hearing the witnesses testified they had not identified appellant to the arresting officer at the time of appellant's apprehension (contrary to the officer's testimony to that effect). It does not follow, however, that they were asked to identify appellant at that time and were unable to. On the contrary, Mrs. Byrd had already left the scene when the apprehending officer returned with appellant, and Miss McCurdy, by her acquiescence in appellant's arrest and placement in the patrol wagon in her presence, clearly revealed she was satisfied that appellant was the robber. The police obviously were also satisfied with this tacit identification of the appellant because Miss McCurdy was not called upon by them to make further identification. It was the defendant's parole officer who, acting independently and without knowledge of the police, for purposes of his own, later showed Miss McCurdy and Mrs. Byrd the mug shots of appellant.

The unlawful and alleged suggestive out-of-court identification was not established at the hearing on the motion to suppress to be the basis of the witnesses' identification of appellant. We find no error, therefore, in the admission at the trial of the identification testimony of Miss McCurdy and Mrs. Byrd which they stated to be based on their personal observations of appellant immediately prior to and during the robbery, they having the opportunity to make a study of his face.

Furthermore, we must point out that independent of the identification testimony, the circumstantial evidence in the case was sufficient upon which the jury's verdict of guilty could be sustained, and the law on circumstantial evidence was properly and fully presented in the charge to the jury.

We find no reason to disturb the verdict of guilty returned by the jury, and therefore affirm the lower court's refusal of appellant's motions for new trial and in arrest of judgment.

Judgment of sentence affirmed.