393 A.2d 424

**COMMONWEALTH of Pennsylvania**

v.

**Rhett BOGAN, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Nov. 14, 1977.

Decided Oct. 5, 1978.

154

Charles Lowenthal, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Michael R. Stiles, Asst. Dist. Atty., Chief, Appeals Div., Gaele McLaughlin Barthold, Asst. Dist. Atty., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION

EAGEN, Chief Justice.

These appeals are from the judgments of sentence imposed upon appellant, Rhett Bogan, following his conviction by a jury of robbery and murder of the second degree.

The charges against Bogan arose out of the fatal shooting of James Greenberg during the commission of a robbery inside his West Philadelphia grocery store-delicatessen on September 6, 1973.

Bogan advances four assignments of error as grounds for a new trial. The four asserted errors relate to the admission into evidence of his confession and the in-court identification testimony of two eyewitnesses to the murder.

For the reasons stated herein, we decide that the admission into evidence of the in-court identification of one eyewitness constituted error requiring reversal and a new trial. Since a new trial is mandated, in the interest of advancing the efficient administration of justice, we shall also consider the other three assignments of error which will undoubtedly be pertinent to the new trial. *Commonwealth v. Smith,* 470 Pa. 220, 368 A.2d 272 (1977).

## I

First, Bogan contends that a statement given by him to police and introduced into evidence at trial was the product of an illegal arrest and should have been suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and *Commonwealth v. Whitaker,* 461 Pa. 407, 336 A.2d 603 (1975).[1]

Bogan was initially arrested for purse snatching at 4:15 p. m. on September 21, 1973. He confessed to that charge on the same day at 5:15 p. m. at the Central Detective Division of the Philadelphia Police Department. The defense concedes that there was probable cause for the purse-snatching arrest and that Bogan's confession to that charge was made after an intelligent waiver of his constitutional rights.

Bogan was detained at Central Detective Division overnight and occupied a room with one Emmett Vinson, who was also in custody. The next morning Detective Pascali observed Vinson and Bogan, who were the sole occupants of the room, engaged in conversation. Shortly thereafter, at approximately 10:00 a. m. on September 22, 1973, Vinson informed Detective Pascali that Bogan had told him he shot a storekeeper in a West Philadelphia grocery store holdup about two weeks earlier when the man grabbed his jacket to

---

1. A pretrial motion to suppress was denied after an evidentiary hearing.

prevent his escape. Detective Pascali contacted the homicide division and was instructed by Sergeant Green to transport Bogan to homicide headquarters. Bogan arrived at homicide headquarters at 12:15 p. m. on September 22, 1973. Bogan contends that the transfer to homicide constituted a second arrest—this one for murder and robbery—which was not supported by probable cause.

Assuming without deciding that this did constitute a second arrest for which probable cause was required,[2] and that probable cause to arrest for the murder and robbery was lacking, thereby rendering this "arrest" illegal,[3] we conclude that Bogan's statement nonetheless need not have been suppressed on this ground. In *Wong Sun, supra,* 371 U.S. at 487–88, 83 S.Ct. at 417, the Supreme Court stated:

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" [Citation omitted.]

The Court in *Wong Sun* noted that challenged evidence may be purged of the primary taint only if (1) it results from "'an intervening independent act of a free will,'" *Wong Sun, supra* 371 U.S. at 486, 83 S.Ct. at 416, or (2) if the connection between the arrest and the evidence has "'become so attenuated as to dissipate the taint.'" *Id.,* 371 U.S. at 491, 83 S.Ct. at 419 [citation omitted].

**2.** The Commonwealth does not dispute this assumption. *But see United States ex rel. Brown v. Rundle,* 450 F.2d 517 (3d Cir. 1971); *Rigney v. Hendrick,* 355 F.2d 710 (3d Cir. 1965). *Compare Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

**3.** There is nothing on the record to show that Detective Pascali, to whom Vinson's tip was given, or Sergeant Green, who ordered Bogan transferred to homicide, had any independent information that would tend to corroborate Vinson's tip.

■ Thus, under *Wong Sun,* all confessions made by an illegally arrested person are not per se inadmissible as trial evidence. *United States v. Ceccolini,* 435 U.S. 1054, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978); *Brown v. United States,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Commonwealth v. Barnett,* 471 Pa. 34, 369 A.2d 1180 (1977); *Commonwealth v. Wright,* 460 Pa. 247, 332 A.2d 809 (1975); *Commonwealth v. Bishop,* 425 Pa. 175, 228 A.2d 661 (1967), *cert. denied,* 389 U.S. 875, 88 S.Ct. 168, 19 L.Ed.2d 159. This, however, can be determined only on the facts of each case.

■ The United States Supreme Court in *Brown v. United States, supra,* noted several factors to be considered in scrutinizing an individual case: (1) whether *Miranda* warnings were given; (2) the "temporal proximity of the arrest and the confession"; (3) "the presence of intervening circumstances"; and, (4) "the purpose and flagrancy of the official misconduct". The voluntariness of the statement is, of course, a threshold requirement, *Brown v. United States, supra* 422 U.S. at 604, 95 S.Ct. at 2264, and the confession must also be "free of any element of coerciveness due to the unlawful arrest". *Commonwealth v. Bishop, supra* at 666. The burden of showing admissibility rests on the prosecution. *Brown v. United States, supra; Commonwealth v. Barnett, supra; Commonwealth v. Wright, supra; Commonwealth v. Bishop, supra.*

Although the lower court made a finding of probable cause and, thus, did not evaluate the circumstances of this case in light of the inquiry mandated by *Wong Sun,* the record of the suppression hearing contains sufficient detail from which we may make the evaluation and determination. We conclude that the Commonwealth sustained the burden of showing that the evidence in question was admissible under *Wong Sun.*

Bogan's first admission of involvement in the Greenberg killing was separated from his "illegal arrest" by exactly four hours. *Miranda* warnings were initially given to Bogan ten minutes after his arrival at homicide and they were repeated immediately after the admission but before Bogan

began making an oral statement which was simultaneously reduced to writing.

In addition, "intervening circumstances" were present between Bogan's arrest and his confession. Bogan denied any knowledge of the Greenberg killing until he was advised that he matched the description of Greenberg's assailant. This development, rather than any exploitation of an "illegal arrest", prompted Bogan's confession.[4] *See Commonwealth v. Wright,* 460 Pa. 247, 332 A.2d 809 (1975); *Commonwealth v. Fogan,* 449 Pa. 552, 296 A.2d 755 (1972) (Plurality Opinion). *Cf. Commonwealth v. Farley,* 468 Pa. 487, 364 A.2d 299 (1976).

Moreover, Bogan's "illegal arrest" was not "purposeful" or "flagrant". At the time of the "arrest" he was already in custody on another charge. The police department had collective knowledge of the Greenberg killing, including a description of the assailant. In light of Vinson's tip implicating Bogan in that killing, we cannot assume that Bogan would have escaped apprehension on that charge indefinitely. Accordingly, the only effect of the "illegal arrest" was to hasten Bogan's apprehension on the robbery-murder charge. *See Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972).

■ Finally, in extensive findings of fact, the suppression court determined that Bogan's confession was voluntarily made and free of any element of coercion. The record supports that determination. *See Commonwealth v. Sparrow,* 471 Pa. 490, 498–499, n. 5, 370 A.2d 712, 715–16, n. 5 (1977).

4. Taking of the statement was interrupted when Bogan was taken to be arraigned on the purse-snatching charge lodged as a consequence of his original arrest. At the time of the interruption, less than four and one-half pages of the eleven-page statement had been completed. Bogan returned from arraignment court and completed his statement. Thus, he ratified his earlier statement and provided numerous additional details about the crime after he was brought before a judge and arraigned on an unrelated charge.

## II

■ Next, Bogan contends that his statement was the product of an unnecessary delay between his "arrest" and arraignment on the instant charges and, therefore, it should have been suppressed, pursuant to *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972).[5] We conclude that Bogan's confession was not inadmissible on this ground.

The chronology of the "arrest" and statement is as follows. Bogan's transfer from Central Detective Division to homicide headquarters was completed at 12:15 p. m. on September 22, 1973. At 12:25 p. m. he was given *Miranda* warnings. Thereafter, in the first interview, personal background information was elicited. At 12:50 p. m. Bogan consented to take a polygraph test which was administered between 1:15 and 2:30 p. m.

A second interview began at 2:50 p. m. during which Bogan initially denied any knowledge of the Greenberg robbery-murder but later admitted his involvement. This admission was made at 4:15 p. m.—exactly four hours after Bogan's arrival at homicide headquarters. Following *Miranda* rewarnings, Bogan began making an oral statement which was reduced to writing. Taking of the statement was interrupted in order to arraign Bogan on an unrelated charge. It resumed at 5:25 p. m. and was completed at 6:10 p. m., less than six hours after Bogan's arrival at homicide. Bogan was arraigned on the instant charges at 2:15 a. m. on September 23, 1973.

■ The relevant time period for determining a claim of unnecessary delay is the time between arrest and the initial incriminating statement. *Commonwealth v. Perry,* 468 Pa. 515, 364 A.2d 312 (1976); *Commonwealth v. Rowe,* 459 Pa. 163, 327 A.2d 358 (1974). Thus, the relevant time frame in this case is, at most, four hours (12:15 and 4:15, respectively).

---

**5.** Bogan does not challenge as "unnecessary delay" any time that he was in custody prior to his transfer to homicide headquarters at 12:15 p. m. on September 22, 1973. *Compare Commonwealth v. Terry,* 457 Pa. 185, 321 A.2d 654 (1974); *Commonwealth v. Wiggins,* 472 Pa. 95, 371 A.2d 207 (1977) (Opinion in Support of Affirmance).

Of that time, only two hours and forty minutes were used for questioning, including a one hour and fifteen minute voluntary polygraph examination. Bogan's confession was not of the type proscribed by *Futch* or its progeny. *Commonwealth v. Taylor,* 472 Pa. 1, 370 A.2d 1197 (1977) (Plurality Opinion); *Commonwealth v. Coley,* 466 Pa. 53, 351 A.2d 617 (1976) (Plurality Opinion); *Commonwealth v. Young,* 460 Pa. 598, 334 A.2d 252 (1975).

## III

Bogan also contends that the in-court identification testimony of Mrs. Greenberg, wife of the victim, was improperly admitted into evidence.

Prior to trial, defense counsel moved to suppress both the in-court and out-of-court identification testimony of Mrs. Greenberg. Evidence introduced at the hearing on the motion established that Mrs. Greenberg had previously identified Bogan at a one-on-one confrontation at the Police Administration Building on September 22, 1973, after she was told that the man in custody had confessed to the killing. In addition, at the time of the hearing, Mrs. Greenberg positively identified Bogan as the person who shot her husband.

The suppression court found that the out-of-court identification, which was conducted in the absence of counsel, was impermissibly suggestive and therefore constitutionally defective. *See Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). As a consequence, testimony regarding it was ruled inadmissible at trial. However, the court also found that Mrs. Greenberg's proposed in-court identification was based on her observation of Bogan at the time of the crime and was not induced or "tainted" by the impermissible out-of-court identification. *See United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Therefore, that proposed testimony was ruled admissible at trial.

Bogan argues that the Commonwealth did not establish by "clear and convincing evidence" that Mrs. Greenberg's proposed in-court identification had an independent origin as required by *Wade* and Pennsylvania appellate decisions thereunder, and that, therefore, the court erred in admitting her testimony. *See United States v. Wade, supra; Commonwealth v. Fowler,* 466 Pa. 198, 352 A.2d 17 (1976); *Commonwealth v. Brown,* 462 Pa. 578, 342 A.2d 84 (1975); *Commonwealth v. Thomas,* 460 Pa. 442, 333 A.2d 856 (1975). To the contrary, we are satisfied the Commonwealth sustained its burden of proof.

 Once the "primary illegality" of a pre-trial confrontation has been established, an in-court identification is admissible only if the Commonwealth can show, by "clear and convincing evidence" that the in-court identification had an independent origin "sufficiently distinguishable to be purged of the primary taint." *United States v. Wade, supra.* The primary focus of the inquiry must be on whether the earlier confrontation resulted in a "substantial likelihood of misidentification" by the witness at trial. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In evaluating the likelihood of misidentification, consideration should be given to factors which could provide the witness with a basis for his identification testimony independent of the suggestive confrontation. In *Wade,* the United States Supreme Court listed the following factors to be considered:

" . . . the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed

concerning the conduct of the lineup." [Footnote omitted.]

*Wade, supra,* 388 U.S. at 241, 87 S.Ct. at 1940.

Applying these factors to the instant case, we find that the suppression court properly concluded that "Mrs. Greenberg's in-court identification was based solely on a recollection of the criminal episode itself and was not tainted by the prohibited out-of-court confrontation."

Mrs. Greenberg testified that she first observed her husband's assailant when he directly faced her from across the counter and ordered a ham hoagie. At this time, he was only two to three feet away from her, the lighting was good, and he was wearing neither sunglasses nor any other face covering. She further observed him when he went behind the counter and scuffled hand to hand with her husband. Later, when Mr. Greenberg and his assailant were scuffling at the front door, she could see his face "fully." Mrs. Greenberg stated with certainty that she would be able to recognize Bogan, without regard to the confrontation at police headquarters. She stated: "I just see him in my mind all the time . . .. He's right in front of me all the time . . .. I see the man that shot my husband in my mind all the time, right in front of me."

Mrs. Greenberg had described her husband's assailant to a police detective nine days after the incident as being a black male, 18 years old, 5 feet 8 inches, 160 pounds, without a bush. We cannot say this description was substantially different from Bogan's record description: a black male, 21 years of age, 6 feet tall, weighing 165 pounds. Moreover, there had never been an occasion where Mrs. Greenberg had failed to identify Bogan or had identified another person as the assailant. In fact, on September 22, 1973, she viewed a group of photographs which did not contain a picture of Bogan and made no identification.

The circumstances surrounding the out-of-court confrontation are, in this case, no aid in determining whether the in-court identification was tainted by the prohibited confrontation. There are discrepancies in the suppression hearing

testimony as to whether, in fact, Mrs. Greenberg ever made an out-of-court identification. It is clear that she was present at police headquarters on September 22, 1973, sixteen days after the killing, and that she briefly viewed Bogan through a one-way mirror after being told that the person in custody had confessed to the killing. There is, however, no police record to indicate that Mrs. Greenberg actually identified Bogan as her husband's assailant.

Thus, despite the "primary illegality" of a prohibited out-of-court confrontation, there was no "substantial likelihood of misidentification" by Mrs. Greenberg at trial inasmuch as the Commonwealth showed by "clear and convincing evidence" an independent basis for her in-court identification testimony.

Bogan asserts that, despite the opportunity to observe the assailant at the time of the crime, Mrs. Greenberg, according to her testimony, did not pay particular attention to his features prior to the melee and was so frightened during the incident that she was unable to focus on the assailant's facial characteristics. Moreover, he suggests that her motive for testifying was to avenge her husband's death.

Bias or interest on the part of the identifying witness is not a proper basis for disqualifying an in-court identification which has been determined to be independent of a prior unlawful identification. *See Commonwealth v. Baker,* 220 Pa.Super. 86, 283 A.2d 716 (1971). The credibility and weight to be given to any witness's testimony is properly a matter for the jury. The trial court charged extensively on the issue of identification, and in so doing, fully informed the jurors that they could reject any such testimony if they found that it lacked credibility.

## IV

Finally, Bogan contends that the in-court identification of him by Arthur Smith, a customer in the delicatessen at the time of the killing, was improperly admitted into evidence because it was tainted by a prohibited pretrial confrontation. We agree that the trial court erred in admitting Smith's identification testimony and we reverse on this ground.

On June 10, 1974, Smith testified at the suppression hearing as follows: "No, I can't definitely say that I can really identify anyone definitely. I'm not sure." However, on June 17, 1974, after the start of trial, the prosecutor informed the court that Smith was prepared to make an identification.

A new suppression hearing was held at which Smith testified, in essence, as follows: Smith had been unable to identify Bogan from the full-face view he had of him at the initial suppression hearing. However, the following day Smith attended the hearing as a spectator, sat in the back of the courtroom, and observed Bogan's profile from a rear angle. He testified that from this perspective he recognized Bogan as the man who shot Mr. Greenberg.

Bogan argues that Smith's presence in the courtroom after he had failed to make an identification from the witness stand and during testimony which recounted Mrs. Greenberg's identification at police headquarters constituted an impermissible confrontation which tainted Smith's subsequent in-court identification testimony at trial. Further, he maintains that the taint was not removed by the establishment of an independent basis for that testimony in Smith's observations at the time of the crime.

We agree that Smith's pretrial identification of Bogan amounted to an impermissibly suggestive one-on-one confrontation in the absence of counsel since counsel was not aware that an identification was being made and, therefore, had no opportunity to cross-examine the witness at the time of the identification.[6] Thus, a "primary illegality" was established, and Smith's in-court identification should have been suppressed unless the Commonwealth met its burden of showing by "clear and convincing evidence" that the in-court identification was not based on the illegal confrontation but, rather, had an independent origin.

Because the suppression court determined Smith's testimony was admissible, we may consider only the evidence

6. *Compare Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *Commonwealth v. Taylor,* 472 Pa. 1, 370 A.2d 1197 (1977).

presented by the Commonwealth and so much of the evidence presented by Bogan as fairly read remains uncontradicted. *Commonwealth v. Johnson,* 467 Pa. 146, 354 A.2d 886 (1976). So viewed, the record establishes the following:

Smith testified that at the time of the crime he and a friend were seated at a table with their backs to the service area. They were drinking beer, talking and watching television when the robbery began and did not turn around to see the gunman until Mrs. Greenberg began screaming. Smith first observed the assailant under poor lighting conditions at a distance of twenty feet for about one minute. Then Smith observed him grappling with Mr. Greenberg at a distance of about twenty-eight feet for several minutes more. During all this time, Smith had only a "side glance" of the assailant. On the day of the crime Smith told the police he could not identify the man. Further, he testified that he told his friend, "There is no way in the world I could identify this man. Even if I saw him from an angle I could not identify him. I was really shook up." However, nine months later, at the suppression hearing, Smith was certain that he could identify Bogan from a rear angle.

Under these circumstances we cannot conclude that the Commonwealth met its burden of showing that Smith's in-court identification had an independent basis in his observations at the time of the crime. Thus, the admission into evidence of Smith's identification testimony constituted error which cannot be held harmless beyond a reasonable doubt. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). Accordingly, the judgments of sentence are reversed and a new trial is granted.

ROBERTS, J., filed a concurring opinion in which MANDERINO, J., joins.

NIX, J., filed a dissenting opinion, in which POMEROY, J., joins.

PACKEL, former J., did not participate in the decision of this case.

ROBERTS, Justice, concurring.

I join Part IV of Mr. Chief Justice Eagen's opinion granting appellant a new trial. I therefore find it unnecessary to reach any of the other issues raised.

MANDERINO, J., joins in this concurring opinion.

NIX, Justice, dissenting.

The majority states in Part IV of its opinion, "We agree that Smith's pre-trial identification of Bogan amounted to an impermissibly suggestive one-on-one confrontation in the absence of counsel since counsel was not aware that an identification was being made and, therefore, had no opportunity to cross-examine the witness at the time of the identification." Thus it is unclear whether the majority believes the "confrontation" was illegal because it was "impermissibly suggestive" or because it was "in the absence of counsel". Whether a confrontation is so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny due process of law is a ground of attack upon a conviction independent of any right to counsel claim. *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). It seems more likely that the majority bases its finding that the "confrontation" was prohibited on the "absence" of counsel, *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), rather than suggestiveness, *Stovall v. Denno, supra,* since the majority opinion goes on to emphasize that "counsel was not aware that an identification was being made and, therefore, had no opportunity to cross-examine the witness at the time of the identification."[1]

1. The majority's reference to counsel's lack of "opportunity to cross-examine the witness at the time of the identification" causes further confusion. Even if it were necessary to have counsel present under *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), it would not be counsel's function to cross-examine the witness at the identification itself. This is apparently a mistaken reference to one of the considerations the Court had in

The majority's finding of "primary illegality", however, is clearly *wrong* whether it is based on the *Stovall* due process right or the right to counsel under *Wade/Gilbert.* An accused has a right to counsel at a police-conducted lineup or one-man showup because it is a " . . . confrontation *compelled by the State* between the accused and the victim or witnesses to a crime to elicit identification evidence . . . " *United States v. Wade, supra* at 228, 87 S.Ct. at 1933 (emphasis added). "*Wade* and *Gilbert* fashion exclusionary rules *to deter law enforcement authorities* from exhibiting an accused to witnesses before trial for identification purposes without notice to and in the absence of counsel." *Stovall v. Denno, supra* at 297, 87 S.Ct. at 1970 (emphasis added). Likewise, in *Stovall* the question of whether the defendant had been denied due process of law in violation of the fourteenth amendment arose because of a one-man showup arranged by the police.

In the instant case, as stated by the majority, at 430–431, the witness was attending the suppression hearing as a spectator [2] when he made the observation which the majority finds to be a prohibited confrontation. This "confrontation" was not arranged in any way by the police, and hence there was no "state action" which is required for the fourteenth amendment to come into play. Thus Bogan had neither a fourteenth amendment due process right under *Stovall* nor a right to counsel which would be made applicable to the states through the fourteenth amendment due process clause, *Gilbert v. California, supra,* at 271, 87 S.Ct. 1951.

mind in imposing the *Wade/Gilbert* prophylactic rule—so that counsel, having been present at the identification procedure, would be able to cross-examine the witness effectively concerning that procedure *at trial.*

2. Since it is clear that the witness decided on his own to attend the suppression hearing on the day the allegedly illegal confrontation took place, we need not determine whether sufficient state action could be found if he had attended, for example, pursuant to a subpoena to testify at that time.

The majority's only citation of authority in connection with its finding of a prohibited confrontation is its invitation in footnote 6 to compare *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), and *Commonwealth v. Taylor,* 472 Pa. 1, 370 A.2d 1197 (1977), with this case. Comparison of those two cases clearly shows, as do all the progeny of *Wade/Gilbert* and *Stovall,* that the identification procedures found to have violated the defendant's rights were conducted by the police or some other agent of the state. In this case, the witness decided on his own to conduct a procedure by which he might be able to identify the defendant; this procedure was not conducted at the behest of the police or any other agency of the state. The majority in effect is saying that state action is unnecessary for a fourteenth amendment violation. The very language of the first section of the amendment,[3] which contains the due process clause, belies this contention. And the Supreme Court of the United States has never deviated from its square holding in *The Civil Rights Cases,* 109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835 (1883), that the first section of the fourteenth amendment is prohibitory upon the states and the states alone.

The majority reaches an unsound result in this case by ignoring the fundamental requirement of state action. Furthermore, the lack of clarity in the opinion as to precisely which rights of defendant's were supposedly violated will plunge the whole area of the law of pre-trial identification procedures into hopeless confusion. I am compelled to dissent.

POMEROY, J., joins in this opinion.

3. "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S.Const., amend. XIV, § 1.