J-S51030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DERRELL SAVAGE | : | |
| | : | |
| Appellant | : | No. 3276 EDA 2017 |

Appeal from the PCRA Order August 29, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0505662-2005

BEFORE: DUBOW, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED MARCH 21, 2019**

Appellant Derrell Savage appeals from the order denying his first petition under the Post Conviction Relief Act[1] (PCRA), after a prior panel of this Court remanded the matter for an evidentiary hearing.[2] Appellant asserts that the PCRA court erred in concluding he was not entitled to relief based on trial counsel's ineffectiveness for failing to call a witness at a suppression hearing. Specifically, Appellant claims the witness would have established that an illegal arrest necessitated the suppression of Appellant's subsequent statements to police detectives. For the reasons that follow, we conclude that

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] *Commonwealth v. Savage*, 1551 EDA 2015 (Pa. Super. filed Apr. 4, 2016) (unpublished mem.).

Appellant failed to establish arguable merit to his ineffectiveness claim and affirm.

The PCRA court summarized the underlying facts of this case:

On March 13, 2005[,] Decedent, Christine Ham, called Appellant, who she believed to be her boyfriend, and invited him to visit her in Chester, PA. Appellant[,] accompanied by two of his friends, Demarcus Hamms and John Garrett, were en route when they were attacked by a group of local youths armed with bats, pipes, and broomsticks. Appellant and his friends believed that [D]ecedent set them up for the assault, and on their way back to Philadelphia[,] they discussed killing her in retaliation. Appellant and his co-conspirators[, including Demarcus Hamms' girlfriend, Felicia Dawson,] planned to lure [D]ecedent to Philadelphia, stab her to death, burn her body, and then throw her remains in the river behind the Bartram Village apartment complex in southwest Philadelphia. On April 23, 2005[,] they carried out their plan. Appellant lured Decedent to the Bartram Garden Botanical Historical Site whereupon Hamms [and Dawson] repeatedly stabbed her while Appellant punched and stomped her. The three then put [D]ecedent in a trashcan and unsuccessfully attempted to set her afire. Finally, they threw her into the river and watched until she began to sink. Decedent did not die immediately, however. She managed to drag herself onto land but succumbed to blood loss and hypothermia. The next day[,] Philadelphia police officers found [D]ecedent's body lying in the field at Bartram Garden. An autopsy revealed that she had been stabbed sixteen times.

PCRA Ct. Op., 8/14/15, at 2-3 (unpaginated) (record citations omitted).

Shortly after the murder, Appellant told a friend, Tasha Ebo, that Mr. Hamms and a female acquaintance had stabbed the victim. At 9:30 p.m. on April 24, 2005, Ms. Ebo spoke with her boyfriend, Philadelphia Police Officer Jesse Davis, who was preparing to work a 10:00 p.m. to 6:00 a.m. shift. Ms. Ebo informed Officer Davis about what Appellant had told her. Based upon this information, Officer Davis wanted to talk to Appellant. Ms. Ebo left her

residence, found Appellant, and brought him to speak with Officer Davis before the officer left for work.

Officer Davis spoke with Appellant inside the officer's personal vehicle. Appellant told the officer "he wanted to get everything off his conscience." N.T. Trial, 12/6/06, at 34. Appellant reiterated that Mr. Hamms and a female acquaintance had stabbed the victim to death in retaliation for the attack in Chester one month earlier. Appellant, however, denied being at the crime scene or being involved in the stabbing. After speaking with Appellant, Officer Davis went to work and informed homicide detectives about Appellant's statements. The detectives asked Officer Davis to attempt to bring Appellant to the police station for questioning. Later that night, Officer Davis talked to Ms. Ebo and asked her to contact Appellant.

On the morning of April 25, 2005, Officer Davis completed his shift and drove to Ms. Ebo's house. The officer walked inside and saw Appellant waiting for him. Officer Davis told Appellant that the homicide detectives wanted to talk to him. Appellant became nervous and telephoned his father, Wayne Savage (Mr. Savage). Mr. Savage arrived fifteen minutes later, and Appellant jumped into his father's vehicle. Officer Davis explained to Mr. Savage that the homicide detectives wanted to talk to Appellant. Mr. Savage responded

that he needed "to make a couple phone calls" before he would transport Appellant to the police station.[3] *Id.* at 32.

Rather than allowing Appellant and Mr. Savage to leave, Officer Davis stood in front of their vehicle and called for back-up officers. Within minutes, additional officers arrived at the scene, removed Appellant from Mr. Savage's vehicle, and transported Appellant to the police station. Appellant arrived at the station at 7:46 a.m., entered through the front door, and signed the visitors' logbook. At 9:00 a.m., Detective Kevin Judge arrived at the station and found Appellant, not handcuffed, sitting on a bench in the waiting area at the Homicide Unit.

At 10:30 a.m., Detective Judge met with Appellant inside an interview room and obtained Appellant's biographical information. Detective Judge did not ask any questions about the murder. After obtaining Appellant's biographical information, Detective Judge left the station to attend a court proceeding. While the detective was out, Appellant remained in the interview room, which was locked. If Appellant wanted to eat or leave the room, he could knock on the door and police personnel would respond.

Detective Judge returned to the police station at 4:30 p.m. At 5:30 p.m., Detective Judge and his partner, Detective Morton, provided Appellant

---

[3] At the PCRA hearing, Mr. Savage testified that Appellant entered his vehicle and said he wanted to speak to a lawyer. *See* N.T. PCRA Hr'g, 9/30/16, at 20. Based upon Appellant's request, Mr. Savage planned to help Appellant find a lawyer before speaking with the detectives. *Id.*

with ***Miranda***[4] warnings.  In addition to verbal warnings, Appellant signed and initialed two forms acknowledging his rights.  ***See*** Commonwealth's Suppression Ex. CM1 at 1-2.  At that point, the detectives moved Appellant out of the interview room.  The detectives decided to question Appellant in their lieutenant's office, where they had access to a computer and could type out Appellant's statements.

At 5:40 p.m., Appellant commenced his formal interview with the detectives, admitting to being present at the crime scene when Mr. Hamms and Ms. Dawson stabbed the victim.  Appellant, however, continued to deny participating in the crime.  Detective Judge estimated that the interview ended at 7:00 p.m., whereupon Appellant remained in the lieutenant's office with Detective Morton.  Appellant received dinner and fell asleep, but the detectives did not allow him to leave.  Detective Judge later testified that other officers were conducting additional interviews concerning the murder, and the police would not permit the witnesses to leave until the District Attorney's office advised them on how to proceed.  N.T. Suppression Hr'g, 12/4/06, at 68-69.

When Detective Judge exited the lieutenant's office, he learned that Ms. Dawson and Mr. Hamms had arrived at the station, and that Ms. Dawson provided a statement implicating Appellant in the murder.  Detective Judge returned to the lieutenant's office at 12:40 a.m. on April 26, 2005, and informed Appellant about Mr. Hamms and Ms. Dawson's presence at the

---

[4] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

station. Detective Judge asked whether Appellant wanted to continue his formal interview and add anything to his statement, and Appellant elected to provide additional inculpatory details.

The Commonwealth charged Appellant with first-degree murder and criminal conspiracy. On December 4, 2005, Appellant filed a motion to suppress his confession. In the motion, Appellant claimed that his confession was "the fruit of an illegal arrest which was not based upon probable cause." *See* Suppression Mot., 12/5/05, at 2 (unpaginated). Further, Appellant asserted that "the totality of these circumstances was such that the length of time during which he was in custody prior to giving his statement resulted in his will being overborne to such a degree that his statements were not voluntary." *Id.* (citation omitted).

At the suppression hearing, Appellant's trial counsel focused his argument on the fact that Appellant's "will and his understanding were overborne by [the] extremely lengthy period of being held in a small room without food or drink, without anybody to advise him." N.T. Suppression Hr'g at 4-5. Subsequent testimony from Detective Judge did not mention that the police removed Appellant from Mr. Savage's vehicle and transported him to the police station for questioning.

At the conclusion of the hearing, the trial court denied Appellant's motion. The court credited the testimony of Detective Judge and concluded that Appellant went to the police station "totally voluntarily as a witness," the

police did not deny him food or drink, and he made his statements after knowingly waiving his **Miranda** rights. **Id.** at 119-20.

On December 14, 2006, a jury convicted Appellant of first-degree murder and criminal conspiracy. On February 28, 2007, the trial court sentenced Appellant to life imprisonment without the possibility of parole for murder and a concurrent term of twenty to forty years' incarceration for conspiracy. This Court affirmed Appellant's judgment of sentence on April 25, 2008, and the Supreme Court of Pennsylvania denied his petition for allowance of appeal on December 16, 2008. **See Commonwealth v. Savage**, 953 A.2d 839 (Pa. Super. 2008) (unpublished memorandum), *appeal denied*, 962 A.2d 1196 (Pa. 2008).

Appellant timely filed his first *pro se* PCRA petition on July 27, 2009. The PCRA court appointed counsel, who filed an amended petition on March 14, 2011. Appellant claimed that his trial counsel was ineffective for failing to call known and necessary witnesses at the suppression hearing to establish that the police illegally arrested Appellant prior to his confession. **See** Am. PCRA Pet., 3/14/11, at 2. The petition included an affidavit from Mr. Savage, who stated that he was available and willing to testify at the suppression hearing about the circumstances surrounding the illegal arrest. **Id.** at 2-3. Appellant further alleged that the illegal arrest directly led to his involuntary

confession. *Id.* at 2. On April 30, 2015, the PCRA court dismissed Appellant's petition without a hearing.[5]

Appellant appealed, and a prior panel of this Court vacated the PCRA court's order and remanded the matter for an evidentiary hearing. The panel addressed Appellant's claims as follows:

> the PCRA court erred by not rendering a specific credibility determination regarding the claims presented in Mr. Savage's . . . affidavits. To the extent that the court's opinion indicates that it rejected [Mr. Savage's] claims because the evidence at the suppression hearing contradicts them, the record does not support that determination.

*Savage*, 1551 EDA 2015, at 13.

Upon remand, the PCRA court conducted evidentiary hearings on September 30, 2016, and December 21, 2016, and Mr. Savage and Appellant's trial counsel testified. On August 29, 2017, the court again denied relief.

Appellant timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court filed a responsive opinion. The PCRA court found that Mr. Savage's testimony would have established that the police illegally arrested Appellant.[6] The court

---

[5] Between 2011 and 2015, the PCRA court granted multiple continuance motions from both parties. On February 26, 2015, the court issued a Pa.R.Crim.P. 907 notice of intent to dismiss the petition without a hearing. Appellant did not respond to the Rule 907 notice.

[6] The PCRA court found that Mr. Savage's testimony at the evidentiary hearing was "mostly credible," but did not identify specifics portions of the testimony that it found not credible. *See* PCRA Ct. Op., 3/29/18, at 5. Instead, the court merely noted that Mr. Savage's testimony, "in many respects," corroborated the trial testimony of Officer Davis. *Id.* at 5, 7.

concluded, however, that no relief was due. The court emphasized that evidence of the illegal arrest would not have changed the outcome of the suppression hearing or trial, because "Appellant voluntarily [put] himself in position for his interaction with police," and his confession "was not the result of police coercion." *Id.* at 7.

Appellant now raises the following issue for our review:

> Whether the PCRA court's conclusion that counsel was not ineffective within the meaning of *Commonwealth v. Pierce*, 786 A.2d 203 (Pa. 2001) and its progeny was supported by the record and free of legal error where, during a motion to suppress [Appellant's] statement, counsel neglected to offer available evidence of [Appellant's] illegal arrest which precipitated the statement at issue.

Appellant's Brief at 9.

Appellant asserts that the PCRA court misapplied the test for ineffective assistance of counsel in evaluating his claim. *Id.* at 16. Appellant suggests that the court "conflated or confused the prejudice and arguable merit prongs" of the test, "improperly re-adjudicated the merits of [Appellant's] suppression motion," and it "failed to evaluate whether there was a reasonable probability that the outcome of **trial** would have been different if suppression were granted." *Id.* at 16-17 (emphasis in original).

Of relevance to this appeal, Appellant argues that his ineffectiveness claim had arguable merit because "an illegal arrest is properly considered in determining whether a statement is voluntary," and Mr. Savage's testimony established that Appellant "was illegally arrested and taken against his will" to the police station. *Id.* at 24, 26. Moreover, Mr. Savage testified that he "was

ready, willing and able to testify on behalf of" Appellant and informed trial counsel about the circumstances surrounding Appellant's illegal arrest. *Id.* at 27.

Our review of the dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (quotation marks and citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citation omitted). We review the PCRA court's legal conclusions *de novo*. *See Miller*, 102 A.3d at 992. This Court "may affirm a decision of the [PCRA] court if there is any basis on the record to support the [PCRA] court's actions, even if we rely on a different basis." *Commonwealth v. Moser*, 999 A.2d 602, 606 n.5 (Pa. Super. 2010) (citation omitted).

We presume that the petitioner's counsel was effective. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). To establish a claim of ineffectiveness, a petitioner "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Turetsky*, 925 A.2d 876, 880 (Pa. Super. 2007) (citation omitted). A petitioner must establish (1) that the underlying claim has arguable merit; (2) that counsel lacked a reasonable basis for his action or inaction; and (3) but

for the act or omission in question, the outcome of the proceedings would have been different. ***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007); ***accord Commonwealth v. Mallory***, 941 A.2d 686, 704 n.18 (Pa. 2008) (explaining that when a defendant claims he received ineffective assistance at a pretrial suppression hearing, a determination regarding prejudice requires the examination of the effect of the tainted evidence on the trial). "A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs." ***Washington***, 927 A.2d at 594 (citation omitted).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.] Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Smith, K.***, 167 A.3d 782, 788 (Pa. Super. 2017) (citations and quotation marks omitted).

For claims of ineffectiveness based upon counsel's failure to call a witness:

> A defense attorney's failure to call certain witnesses does not constitute *per se* ineffectiveness. In establishing whether defense counsel was ineffective for failing to call witnesses, a defendant must prove the witnesses existed, the witnesses were ready and willing to testify, and the absence of the witnesses' testimony prejudiced petitioner and denied him a fair trial.

***Commonwealth v. Cox***, 983 A.2d 666, 693 (Pa. 2009) (citations omitted). A petitioner "must show how the uncalled witnesses' testimony would have

been beneficial under the circumstances of the case." ***Commonwealth v.***

***Gibson***, 951 A.2d 1110, 1134 (Pa. 2008) (citation omitted).

In the context of an illegal arrest,

not all confessions or admissions secured from an illegally arrested person are *per se* inadmissible as trial evidence. Whether such evidence is admissible depends on the facts in each case, considering the following factors:

(1) whether ***Miranda*** warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and, (4) the purpose and flagrancy of the official misconduct. The voluntariness of the statement is, of course, a threshold requirement, and the confession must also be free of any element of coerciveness due to the unlawful arrest.

***Commonwealth v. Smith, W.***, 995 A.2d 1143, 1152 (Pa. 2010) (citations

and quotation marks omitted).

Instantly, the PCRA court concluded that the police illegally arrested

Appellant based on Mr. Savage's testimony at the PCRA hearing.

Nevertheless, the PCRA court's conclusion that an illegal arrest occurred did

not automatically mean that the trial court should have granted Appellant's

suppression motion. ***See Smith, W.***, 995 A.2d at 1152.

Pursuant to the relevant factors, ***see id.***, we note that Appellant

received ***Miranda*** warnings from Detectives Judge and Morton at 5:30 p.m.

on April 25, 2005, prior to giving a formal statement. ***See*** N.T. Suppression

Hr'g at 27. Detective Judge also testified that they used two forms to assist

with their explanation, and Appellant signed and initialed the forms to

- 12 -

acknowledge his understanding of his rights. *See* Commonwealth's Suppression Ex. CM1 at 1-2

With respect to the timing of his statement, Appellant arrived at the police station at approximately 7:46 a.m., received his *Miranda* warnings at 5:30 p.m. and commenced his formal interview with the detectives at 5:40 p.m. At 12:40 a.m. on April 26, 2005, Detective Judge informed Appellant about Mr. Hamms and Ms. Dawson's presence at the station. At that point, Appellant elected to continue his formal interview by providing additional inculpatory details. Therefore, ample time elapsed between the illegal arrest and Appellant's formal confession. *See Commonwealth v. Bogan*, 393 A.2d 424, 427 (Pa. 1978) (plurality) (holding that the defendant's confession was voluntary and free of any element of coercion where, *inter alia*, the confession occurred four hours after the arrest); *compare Commonwealth v. Farley*, 364 A.2d 299, 304 (Pa. 1976) (holding that the defendant's confession was impermissibly tainted by the illegal arrest where, *inter alia*, the confession came shortly after the arrest).

Significantly, the detective told Appellant that Mr. Hamms and Ms. Dawson were in custody and providing statements about the murder before Appellant confessed. The news about his co-conspirators, rather than any exploitation of an illegal arrest, motivated Appellant to continue his formal interview and provide inculpatory details. *See Commonwealth v. McFeely*, 502 A.2d 167, 170-71 (Pa. 1985) (holding the defendant's confession was the product of the intervening circumstances of being confronted with the

suspected murder weapon and his co-conspirator, who accused the defendant of shooting the victim); *see also Bogan*, 393 A.2d at 427 (explaining that the defendant denied any knowledge of the murder until he was advised that he matched the description of the assailant; this development, rather than any exploitation of an illegal arrest, prompted the defendant's confession).

Finally, as to the flagrancy of the police misconduct, the officers did not bring Appellant to the station as part of an illegal "dragnet" arrest for investigative purposes. *See Commonwealth v. Fogan*, 296 A.2d 755, 758 (Pa. 1972) (condemning the practice of dragnet arrests, where the defendant and all known members of his gang were taken into custody and questioned about a shooting, despite the fact that the police had no information that those arrested were among those who participated in the shooting). Rather, the police removed Appellant from Mr. Savage's vehicle only after Appellant voluntarily sought out Officer Davis and conveyed certain details about the murder.

Under these circumstances, we agree with the PCRA court that Appellant's confession was voluntarily given and admissible at trial, regardless of the legality of Appellant's arrest. *See Smith, W.*, 995 A.2d at 1153. As this issue is meritless, we cannot deem trial counsel ineffective for failing to call Mr. Savage as a witness at the suppression hearing. *See Smith, K.*, 167

A.3d at 788.  Therefore, the court properly denied PCRA relief.[7]  **See Moser**,

999 A.2d at 605 n.5.

     Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/21/19

---

[7] Because we conclude that Appellant has failed to satisfy the arguable merit prong of the test for ineffectiveness, we need not address his remaining arguments as to the last two prongs of the test.  **See Washington**, 927 A.2d at 594.