456 A.2d 654

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Francis RUTIGLIANO.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1980.

Filed Feb. 18, 1983.

William H. Ryan, Assistant District Attorney, Drexel Hill, for Commonwealth, appellant.

Michael F.X. Coll, Media, for appellee.

Before PRICE\*, WATKINS and MONTGOMERY, JJ.

PRICE, Judge:

The Commonwealth appeals from an order suppressing evidence obtained pursuant to a warrantless search of appellee's automobile.[1]

The following facts were adduced at the suppression hearing: At approximately 4:30 p.m. on November 11, 1979, Walter Schoch of North Broad Street in Kennett Square, Pennsylvania, noticed an unfamiliar automobile parked near the residence of his neighbors, Richard and Gloria Pia, also of North Broad Street. The automobile was parked in the middle of a little-used, single lane, unpaved public road located perpendicular to North Broad Street and adjacent to the Pia residence. Schoch observed that the automobile was a tan colored Buick station wagon. He noted the absence of any persons in the automobile or in the vicinity of the house, but he heard a noise originating from the Pia home. Schoch continued to observe the house for fifteen minutes but saw no one. Believing the Pias were not at

---

\* Died Jan. 30, 1983. This decision was reached prior to his death.

1. The suppression order entered in this case, in addition to raising a question of law, would substantially handicap or terminate the prosecution. *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963), cert. denied *Bosurgi v. Pennsylvania,* 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963); *Commonwealth v. Trotman,* 280 Pa. Superior Ct. 271, 421 A.2d 718 (1980).

home, Schoch decided to investigate. Because it was raining, he went to get his car from his garage. While backing it out of the garage, Schoch observed the station wagon proceeding southerly along North Broad Street. Schoch followed the station wagon and obtained a more detailed description of the automobile. Specifically, he noted its state of registration and license number, that it had a Citizen Band antenna and a trailer hitch, and that there were two male occupants.

At approximately 5:30 p.m., Officer Little of the Kennett Square Borough Police responded to a report of a burglary at the Pia residence. Officer Little, after obtaining the above details from Schoch, and after speaking with the Pias who informed him that their home had been burglarized, requested that the Chester County Police Radio broadcast a message asking any police department to stop the vehicle matching Schoch's description and obtain the identity of its occupants. Little also relayed that a large quantity of jewelry could be in the vehicle.

At approximately 6:00 p.m. Officer Wood received a message transmitted by the Delaware County police radio which advised that the occupants of the automobile matching the Schoch description, viz., a tan Buick station wagon, Pennsylvania registration 5U2996, with a trailer hitch, should be arrested for burglary. Officer Wood spotted the station wagon at 7:09 p.m. He stopped the vehicle, ordered the two occupants, one William Rosetto and appellee Francis Rutigliano, out of the automobile. Wood then placed them under arrest for the Pia burglary. Appellee was later arraigned on charges of receiving stolen property [2] and criminal conspiracy.[3]

The station wagon was towed to the Springfield Township police station and was searched without a warrant by Officer Wood at approximately 7:45 p.m. that evening. While it was the policy of the Springfield Police Department

2. 18 C.P.S.A. § 3925.

3. 18 C.P.S.A. § 903.

to conduct an inventory search of all vehicles towed to the station, Wood conducted this search with the belief that personal property from the Pia residence might be found in the station wagon. In the course of the search Officer Wood located in the tire well[4] a pillow case containing jewelry from the Pia home.

The trial court ordered suppression of the pillow case and jewelry reasoning that the warrantless search was an intrusion into an area where the appellee had a reasonable expectation of privacy. In a post-suppression hearing opinion, the trial court found the warrantless arrest of the appellee was invalid because of a lack of probable cause.

For the reasons stated herein, we reverse the order of the trial court suppressing the evidence obtained pursuant to a warrantless search.

## I. THE VALIDITY OF THE ARREST

When an arrest is made without a warrant it must be based on probable cause. The burden is on the Commonwealth "to show with reasonable specificity facts sufficient to establish that probable cause existed." *Commonwealth v. Richards*, 458 Pa. 455, 464, 327 A.2d 63, 67 (1974) (quoting from *Commonwealth v. Holton*, 432 Pa. 11, 14–15, 247 A.2d 228, 229–30 (1968)). The crucial test in determining the presence of probable cause is whether "the facts and circumstances known to the police or about which they have reasonably trustworthy information at the time of the arrest ... [would] warrant a person of reasonable caution in believing the suspect has committed or is committing a crime." *Commonwealth v. Bartlett*, 486 Pa. 396, 400, 406 A.2d 340, 341 (1979); *Commonwealth v. Stokes*, 480 Pa. 38, 389 A.2d 74 (1978); *Commonwealth v. Pytak*, 278 Pa. Superior Ct. 476, 420 A.2d 640 (1980).

In the instant case, Walter Schoch, a neighbor of the victim, who was familiar with the neighborhood, noticed

---

4. A tire well is a floor compartment located at the rear of a station wagon which is accessed through the passenger compartment. It is designed to carry a spare tire.

an unoccupied and unfamiliar automobile parked in the middle of a public road adjacent to the home of a neighbor whom he believed to be away at the time. A detailed description of the car was obtained by Schoch, and soon thereafter it was learned that the house had been burglarized. All of the above facts were known to the investigating officer prior to the arrest. While the arresting officer must have a reasonable belief in the probability of criminal activity by the person to be arrested, the belief may "rest solely in information supplied by another person where there is a 'substantial basis' for crediting that information." *Commonwealth v. Stokes, supra,* 480 Pa. at 44, 389 A.2d at 76. Where, as here, a neighbor volunteers information, there is no need to establish credibility. *Commonwealth v. Crawley,* 209 Pa. Superior Ct. 70, 223 A.2d 885, (1966) (superseded by statute as stated in *Commonwealth v. Kaschik,* 235 Pa. Superior Ct. 388, 344 A.2d 519 (1975); *Jaben v. United States,* 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965) reh. den. *Jaben v. United States,* 382 U.S. 873, 86 S.Ct. 19, 15 L.Ed.2d 114 (1965).

■ The appellee contends and the lower court held that since the station wagon was stopped and the arrests made a full two hours after the witness obtained a description of the car, probable cause to arrest could not be present. We disagree.

In *Commonwealth v. Jones,* 233 Pa. Superior Ct. 461, 335 A.2d 789 (1975), a case factually similar to the instant case this court found probable cause for the arrests. There, two men robbed a bar at gun point. As the men drove away a patron noticed that the car was two-toned red and black. Prior to the robbery, two children observed a car of the same color configuration driving up and down the street in front of the bar. Each child memorized one-half of the license plate number. Acting on the above description the police stopped the car one hour later and arrested the occupants.

We find that based on the information gathered by the investigating officer, viz., the occurrence of a burglary, the

neighbor's description of the automobile and his observation that the car had two male occupants, that there was probable cause at the time of the arrests even though approximately two hours had elapsed since the car had last been seen. "It is only the probability and not a prima facie showing of criminal activity that is a standard of probable cause." *Commonwealth v. Vessells*, 273 Pa. Superior Ct. 100, 105, 416 A.2d 1108, 1111 (1979).

Appellee also contends that the arresting officer lacked probable cause to arrest since the investigating officer had requested by radio that the station wagon be stopped and the identity of the occupants ascertained, while the radio message received by the arresting officer directed him to arrest the occupants of the automobile.

■ It is well settled that if the initiating officer possessed facts constituting probable cause, then a warrantless arrest by another officer based upon the direction of the initiating officer shall be upheld. *Whiteley v. Warden of Wyoming State Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

■ Since we have concluded that the investigating officer, who also was the initiating officer, had probable cause to arrest based on the information he gathered, and since the delay in the apprehension did not negate the probable cause, the fact that the arresting officer acted upon a message at variance with the original transmission did not invalidate the arrest.

## II. THE VALIDITY OF THE SEARCH

■ The evidence shows that a search of the station wagon was conducted by the arresting officer at the station house some 35 minutes after the arrest. This search cannot be justified on the theory of a search incident to arrest because of the disparity in time and place from the arrest, *Chambers v. Maroney*, 399 U.S. 42, 47, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419 (1970), nor can it be sustained as an inventory search since the searching officer possessed an investiga-

tory intent. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). However, the search at the station house was valid as we find that the police had probable cause to believe that two men had fled the scene of the burglary carrying the fruits of the crime in a station wagon of which the police possessed a detailed description and the delay in stopping the vehicle did not negate the probable cause. It was in just such a case in *Chambers v. Maroney, supra,* that the United States Supreme Court upheld a warrantless search of an automobile at the station house.[5] The Court stated in *Chambers v. Maroney, supra,* 399 U.S. at 51, 90 S.Ct. at 1981:

> For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.
>
> On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. [Footnote omitted].[6]

**5.** Referring to the circumstances which surrounded the search in *Chambers v. Maroney, supra,* the Court in *Coolidge v. New Hampshire,* 403 U.S. 443, 463, n. 20, 91 S.Ct. 2022, 2036, n. 20, 29 L.Ed.2d 564 (1971), said, "[i]t is true that the actual search of the automobile in *Chambers* was made at the police station many hours after the car had been stopped on the highway, when the car was no longer movable, any 'exigent circumstances' had passed, and, a magistrate easily available."

**6.** The Pennsylvania Supreme Court in *Commonwealth v. Smith,* 452 Pa. 1, 304 A.2d 456 (1973) cert. denied *Smith v. Pennsylvania,* 414 U.S.

In the instant case, since the police had probable cause to search the automobile for the fruits of the burglary immediately upon stopping it without a warrant, the search at the station house was constitutionally valid.

The trial court's order suppressing the evidence obtained in the search of the automobile is reversed and that court is directed to proceed in this case in a manner not inconsistent with this opinion. Jurisdiction is not retained and the parties will have their full rights as to appeal upon conclusion of further proceedings.

1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973) (two Justices concurring in result, two Justices dissenting in an opinion, and one Justice dissenting without opinion), followed *Chambers* in a factually similar case differing principally in the time of day when the police seized the automobile. In *Chambers* the seizure had been at night while in *Smith* it was during daylight hours. The dissenting opinion in *Smith* distinguished *Chambers* as applicable only to those situations where the police have legitimate concerns for their own safety because of the hour of the day. We note in passing that the automobile here was stopped after dark.