459 A.2d 1276

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Charles M. MACK.**

Superior Court of Pennsylvania.

Argued Nov. 3, 1982.

Filed April 29, 1983.

Petition for Allowance of Appeal Denied Oct. 3, 1983.

374

Sarah Vandenbraak, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

John W. Packel, Chief Appeals, Assistant Public Defender, Philadelphia, for appellee.

Before SPAETH, ROWLEY and VAN der VOORT, JJ.

SPAETH, Judge:

This is an appeal by the Commonwealth from an order suppressing evidence seized incident to an arrest. The lower court held that the police officer had no probable cause to make the arrest. However, we think the officer did, and therefore reverse.

■ We must first decide whether the lower court's order is appealable. Recently we held that "[w]hen confronted with a Commonwealth appeal from an order suppressing evidence, we must determine for ourselves whether the order is appealable—whether it terminates or substantially handicaps the prosecution; and we must make that determination on the basis of the record, and on that basis alone." *Commonwealth v. Lapia*, 311 Pa.Super. 264, 277, 457 A.2d 877, 884 (1983) (en banc). Here, the charge is burglary and related offenses, including theft by unlawful taking and disposition and receiving stolen property. The evidence

suppressed is a stolen typewriter. Since without this evidence the Commonwealth will be unable to prove that the defendant possessed stolen property, the suppression order will terminate the prosecution. The order is therefore appealable.

The lower court opens its opinion with the following "Finding of Facts:"

Officer William Hinkle testified that on November 18th, 1980, at approximately 1:00 A.M., he drove past the defendant and another male at 12th and Callowhill Streets, Philadelphia, Pennsylvania (N.T., p. 5). He stated that he observed the two males during a heavy rain carrying an electric typewriter inside a plastic trash bag (N.T., p. 5). The officer testified that he asked the defendant and the other male, "Who belonged to the typewriter?" The officer added that both males denied owning the typewriter (N.T., p. 5). The officer added that he asked them, "Where they got the typewriter" and they stated to him that, "They found it in the trash", pointing across the street to a restaurant where trash bags were sitting out. (N.T., p. 6).

The officer stated that since neither male could produce proof of ownership for the typewriter, he called for a patrol wagon and took the two males and the typewriter to Central Detectives (N.T., p. 6). The officer added that before he arrested the two males, he made a search of the area for burglarized properties and found none (N.T., p. 6). He further stated that he had no reports of a burglary at the time he arrested the two males (N.T., p. 15). The officer added that the typewriter was reported stolen the next day.

Slip op. at 1–2.

Following these findings, the lower court concludes as a matter of law that "the arrest of the defendant was without probable cause .... While the police officer's observation of the defendant might have aroused his curiosity, the officer did not possess reasonable suspicion that the defendant was violating any law or facts to conclude that criminal activity was afoot." *Id.* at 2.

When a lower court's findings of fact are supported by the record, we must accept the findings. *Commonwealth v. Lapia, supra* (collecting cases). Here the lower court's findings are supported by the record. The question, therefore, is whether those findings support the court's conclusion of law that the police had no probable cause to make the arrest. As to conclusions of law we are free to make our own decision. *Commonwealth v. Stamm*, 286 Pa.Super. 409, 429 A.2d 4 (1981), *Commonwealth v. Harm*, 272 Pa.Super. 431, 416 A.2d 533 (1979).

Whether the police have probable cause to make an arrest

> depends upon whether at the time of the arrest the facts and circumstances within the knowledge of the officer, or of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in believing that the suspect has committed or is committing a crime.

*Commonwealth v. Hayes*, 237 Pa.Super. 510, 513, 352 A.2d 121, 122 (1975).

As appellee, defendant relies heavily on *Commonwealth v. Mackie*, 456 Pa. 372, 320 A.2d 842 (1974), and that is a good case with which to start our discussion, for on its facts it is very similar to this case. In *Mackie* the defendant was walking down the street carrying a television set and a pair of field glasses.

> The officer testified: "I asked him—I asked the defendant where was he going. The defendant told me he was going home. I asked him where did he live at. He told me in the [3100] block of Bancroft. I asked the defendant where he was coming from. He told me 3800 North 18th Street. I asked where did he get the t.v. from. He told me him and his girl friend had an argument. He took the t.v. back. So I told him it was unusual for him to be coming from 3800 North 18th Street all the way to Broad and Erie and Bancroft Street is only seven blocks away. The defendant told me that he was looking for a cab and there was no cab that passed him on the way. So

I asked the defendant did he have any money to catch a cab. He said no, he was going home, let the cab take him home and pay the cab when he got home. So the story didn't seem right. So I took the defendant in for investigation.

*Id.*, 456 Pa. at 374, 320 A.2d at 843.

The Supreme Court held that probable cause to arrest did not exist. "The facts and circumstances known to the arresting officer may have warranted his suspicions, but not any belief that the appellant *had committed* or was committing a crime." *Id.*, 456 Pa. at 375, 320 A.2d at 844 (citation omitted; emphasis in original).

■■■ While *Mackie* certainly supports appellee, we are not persuaded that it is dispositive. As the Court observed in *Mackie*, "Each case must be reviewed under its own unique facts and circumstances." *Id.*, 456 Pa. at 376, 320 A.2d at 844. In examining the facts of a case, the court may find that "the nature of the property and the manner and circumstances in which it is possessed may contribute significantly to a finding of probable cause." W. LaFave, *Search and Seizure* § 3.6 at 645 (1978). The court may also find the time of the occurrence significant, for "some activities that are commonplace during daytime, business hours give rise to suspicion during other times of the day." *Commonwealth v. Ellis*, 233 Pa.Super. 169, 174, 335 A.2d 512, 515 (1975).

[T]he point is that these circumstances [time of day, nature of property, manner and circumstances of possession] are highly suspicious and that therefore it will take only a bit more, perhaps as a consequence of a stopping for investigation, to bridge the gap. In particular, those circumstances will likely constitute probable cause if in addition there is present one or more of the following additional facts: (a) an effort by the suspect to conceal the object from police view; (b) an effort by the suspect to disassociate himself from the object upon approach of the police; (c) flight upon approach of the police; (d) refusal by the suspect to respond to reasonable police inquiries about the object; (e) the giving of an implausible

explanation by the suspect concerning how the property came into his possession or what he was presently doing with the property; or (f) the surreptitious transfer of the property from one person or vehicle to another.

W. LaFave, *Search and Seizure, supra* at 646–47 (footnotes omitted).

Here, we have concluded that the Commonwealth proved the "bit more" needed to elevate suspicion to probable cause. In explaining this conclusion, we shall refer to portions of the officer's testimony not referred to by the lower court. We should not do that if anything suggested that the lower court had found any of the officer's testimony incredible, for as we have indicated, we are bound by the lower court's appraisal of the witnesses. *Commonwealth v. Lapia, supra.* However, the officer's testimony was uncontradicted, and so far as we can tell, the lower court accepted all of it. Thus in making its findings, the court simply quotes or paraphrases parts of the officer's testimony. The court appears to have rested its decision not on any disbelief of the officer but rather on the conclusion that while what the officer said was true, it was legally insufficient to show probable cause.

 As already mentioned, the officer encountered appellee and another man at 1:00 A.M. at 12th and Callowhill Streets, in a heavy rain, carrying an electric typewriter inside a plastic trash bag. When the officer got out of his patrol car, the two men stopped walking and put the typewriter down. N.T. 8. It would be an overstatement to describe this as "an effort by the suspect[s] to disassociate [themselves] from the object upon approach of the police," LaFave, *supra,* but it was nevertheless equivocal action tending in that direction.

When the men pointed to the pile of plastic trash bags where they said they had found the typewriter, the officer observed that the trash bags in the pile were all green (or black), but the bag the typewriter was in was black (or green) (the officer was positive that the bags were different in color but he didn't remember which color was which). N.T. 9, 13–14.

The side of the trash bag the typewriter was in was "opened," "slitted from the side," N.T. 12, and the officer could see the "whole side of the typewriter," N.T. 13. Although it was raining hard, the typewriter was dry. N.T. 13. "It looked in good condition to [the officer] and it looked fairly new." N.T. 10. "[T]here was paper in the roller, typewriter paper, that had been ripped." *Id.*

In these circumstances, the men's statement that they had found the typewriter in the trash was "an implausible explanation." LaFave, *supra.* A much more plausible explanation of the circumstances was that the men had stolen the typewriter.

In the first place, assuming that the typewriter was broken, it is unlikely that it would be thrown out with the trash; probably it would have been turned in against the cost of a new typewriter. The nature of the property therefore was inconsistent with the men's explanation to the officer. The same may be said of the manner and circumstances of possession. For if the typewriter had been thrown out with the trash, one would expect it to be in the same color bag as was the rest of the trash. Also, the typewriter would almost certainly have been wet, for it would have been lying on the trash pile for some time (it was 1:00 a.m. when the officer encountered the men), and rain would have fallen through the slit in the bag. And finally, the fact that paper was still in the roller suggested that the typewriter had been taken from someone's desk.

It is of course true that the Commonwealth had the burden of proving probable cause by a preponderance of the evidence, Pa.R.Crim.P. 323(h); *Commonwealth v. Williams*, 298 Pa.Super. 466, 444 A.2d 1278 (1982), but we are satisfied that the Commonwealth met its burden. The test is not whether the officer was *right* in his belief that the men had stolen the typewriter, but only whether he was *probably* right, and while one can imagine an innocent sequence of events that would be consistent with all that the officer saw, it takes some doing.

Bridge players are familiar with the principle involved. If the declarer needs only one favorable distribution of the

380

cards, the chance of making the contract may be very good. But as the number of favorable distributions needed increases—a King in one hand; a Queen in the other; an even division of trumps; a Jack guarded only twice—the chance of making the contract becomes remote. So here, the officer was entitled to conclude that the chance of the men's explanation being true was remote, for before it could be true, several events, each one unlikely, would all have had to occur. And if it wasn't true that the men had found the typewriter in the trash, it was highly probable that they had stolen it.

The force of this conclusion is not diminished by the facts, relied upon by the lower court, that no burglary or theft had been reported and that the officer found no place that appeared to have been broken into. The theft had probably occurred about 1:00 a.m., when the officer encountered the men, for as the typewriter wasn't wet, it couldn't have been outside very long. At that hour, the owner probably hadn't yet learned of the theft. As for no break-in being found: the officer was only able to "check [an area] [a]bout two blocks in each direction." N.T. 9.

The order of the lower court is reversed, and the case is remanded for trial.