465 A.2d 1250

**COMMONWEALTH of Pennsylvania**

v.

**William SORRELL, Appellant.**

Superior Court of Pennsylvania.

Argued March 11, 1980.

Filed Sept. 9, 1983.

William Lee Akers, Philadelphia, for appellant.

Alan Sacks, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

BROSKY, Judge:

In June, 1978 appellant William Sorrell was found guilty by a jury of charges of robbery and conspiracy. He was sentenced to a term of imprisonment of 8 to 16 years and

this appeal followed. We reverse and remand for a new trial because: 1) 42 Pa.C.S. § 5104(c) pursuant to which the lower court denied appellant's attempt to waive his right to jury trial, has been declared unconstitutional by our Supreme Court; and 2) certain incriminating statements made by appellant should have been suppressed as being the fruit of an illegal arrest.

Before discussing the circumstances of appellant's arrest, we will address the jury waiver issue.

Prior to trial, appellant moved, pursuant to Pa.R.Crim. Proc. 1101, to waive trial by jury. That motion was opposed by the Commonwealth which asserted a right to jury trial equal to that of a defendant, citing 42 Pa.C.S. 5104(c). The lower court believed that the Commonwealth's reliance on 42 Pa.C.S. 5104(c) precluded it from granting appellant's request for non-jury trial.

On direct appeal Mr. Sorrell argued that § 5104(c) was unconstitutional. Other appellants, including Mr. Sorrell's co-defendant June O'Bryant raised the same issue and our court subsequently certified the question to our Supreme Court.

In *Commonwealth v. Sorrell,* 500 Pa. 355, 456 A.2d 1326 (1982) the Supreme Court held that 42 Pa.C.S. § 5104(c) is unconstitutional because it conflicts with Pa.R.Crim.Proc. 1101.[1] The case was remanded to our court with instructions to enter an order consistent with the Supreme Court opinion.

■ Based on our recent opinion in *Commonwealth v. Giaccio,* 311 Pa.Super. 259, 457 A.2d 875 (1983), we reverse and remand this case for new trial. In *Giaccio,* the appellant argued, as Mr. Sorrell does, that he was unconstitutionally denied the right to waive trial by jury. We noted the Supreme Court's decision in *Sorrell,* and remanded for new trial with instructions to the lower court that if the appel-

1.  42 Pa.C.S. § 5104(c) effectively gives the Commonwealth a veto over a defendant's request to waive jury trial, whereas Pa.R.Crim.Proc. 1101, promulgated by the Supreme Court, provides that the court make the determination as to whether jury trial can be waived.

lant on re-trial again stated his intention to waive jury trial, the court should proceed under Rule 1101 to decide whether to approve the waiver. As in *Giaccio*, we remand and also instruct the lower court, if it decides to deny the jury waiver request, to state on the record its reasons for the denial.

In addition to the afore discussed issue, appellant also contends that certain incriminating statements made by him should not have been admitted into evidence because they resulted from an illegal arrest. We agree.

The incident which led to the charges against appellant occurred on December 17, 1977 when the Ellis' Luncheonette in Philadelphia was robbed. Appellant was arrested without a warrant in his home at approximately 9:30 p.m. on January 5, 1978 and charged with having participated in the robbery. Mr. Sorrell argues that the arrest was made without probable cause.[2]

After his arrest Mr. Sorrell was taken to police headquarters where he was questioned by the arresting officer until approximately 11:00 p.m. During this interrogation appellant apparently made no incriminating statements. However, he was questioned again at 11:30 at which time he seems to have implicated himself in the commission of the robbery. At 1:00 a.m. January 6, appellant was identified in a photo array by an employee of the store which had been robbed.

In the suppression hearing the officer was asked why he had resumed questioning Mr. Sorrell at 11:30. He respond-

---

**2.** Appellant also contends that his arrest in his home was invalid because it was made without warrant. *U.S. v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, the record of the suppression hearing indicates that this argument was not raised at that time. Nor was it raised in post-verdict motions. The record for this case does not contain a copy of the suppression motion which Pa.R.Crim.Proc. 323(d) must specify the grounds for suppression. Based on the record before us, we are inclined to agree with the Commonwealth's claim that the issue is waived. In any event, however, given our finding that the arrest was made without probable cause, we need not reach the question.

ed that he believed that he had received new information which implicated appellant. However, when he was asked the nature of this additional information, the officer could not recall what he had been told or by whom. Based on this record, we cannot but find that as to the 11:30 interrogation, no intervening events had occurred since the arrests. Since, as we will explain, we believe the arrest to have been without probable cause, we conclude that the 11:30 statement should have been suppressed as a fruit of that arrest.

■ On appeal from the denial of a suppression motion we will consider only the evidence presented by the Commonwealth and so much of the evidence for the defense as fairly read in the context of the record as a whole remains uncontradicted. *Com. v. Baker*, 299 Pa.Super. 241, 445 A.2d 544 (1982).

The arresting officer explained at the suppression hearing that he decided to arrest appellant based solely on information given to him by an informant.

■ It is axiomatic that the Constitution of the United States prohibits the arrest of a person unless the arresting officer has probable cause to believe that a crime has been or is being committed. See *Betrand Appeal*, 451 Pa. 381, 303 A.2d 486 (1973).

The test to be employed in determining whether probable cause exists to arrest is equally well established. As we explained in *Commonwealth v. Brown*, 230 Pa.Super. 214, 219, 326 A.2d 906, 908 (1974):

Probable cause to justify a warrantless arrest exists if the facts and circumstances known to the officer at the time of the arrest would warrant a prudent man in believing that an offense has been committed, and the suspect was the perpetrator of that offense: (citations omitted). Those facts and circumstances, however, are not those that a legal technician might desire when examining the situation in retrospect; but, rather, the practical considerations of everyday life upon which reasonable and prudent men rely[.]

■ Probable cause can be founded in hearsay evidence, as is the case when information is given to a police officer by a third party. The *Betrand Appeal, supra.*

Since the Supreme Court's decisions in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. U.S.,* 393 U.S. 410, 89 S.Ct. 584, 27 L.Ed.2d 637 (1969), we have employed a "two-pronged test" to determine whether an informer's tip can form the basis of probable cause. The test that evolved from those cases required that an officer know the underlying circumstances from which the informer concluded that the suspect participated in the crime. Second, the officer was required to have some reasonable basis for concluding that the source of the tip was reliable. See *Betrand Appeal, Id.*

In a recent decision, however, the United States Supreme Court abandoned the "two-pronged test" and replaced it with a "totality of circumstances" approach.

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) an anonymous informant had sent a letter to the Bloomingdale, Illinois Police Department in which he accused Lance and Susan Gates of dealing illegally in narcotics. The letter described in detail a trip that the Gates would take to procure drugs. The letter predicted that: the Gates would travel to Florida separately on specified dates; that Mrs. Gates would drive and Mr. Gates would fly; that Mr. Gates would drive the car back to Illinois; and that the trunk would be loaded with narcotics. The police investigated the tip and corroborated all the allegations, except the presence of narcotics in the trunk.

The police then sought a search warrant for the Gates' residence and their automobile. The state court judge to whom application was made found that probable cause had been established. However, the Illinois appellate courts reversed saying that the affidavit submitted in support of the search warrant application failed to establish probable cause. The Illinois Supreme Court found that the anonymous letter alone would not provide a basis on the finding

that probable cause existed, since it did not meet the *Aguilar-Spinelli* "two pronged test."

While the United States Supreme Court indicated that it was inclined to agree that the letter alone was not a sufficient basis for a finding of probable cause, the court found that the corroboration of the informant's allegations by the police provided the police with reason to act on the informer's tip.

In explaining its holding the Supreme Court said that it would no longer employ the *Aguilar-Spinelli* test but instead reaffirmed the totality of the circumstances analysis that traditionally has informed probable cause determinations. *Gates* at ——, 103 S.Ct. at 2332.

> The court explained the approach to be taken as follows: The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place and the duty of the reviewing court is simply to insure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. Id. at ——, 103 S.Ct. at 2332.

Although *Gates* involved seizure of tangible property as opposed to seizure of the person, as in the instant appeal, the principles enunciated in that case surely apply to cases such as ours. As the Supreme Court explained in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980), "The simple language of the [Fourth] amendment applies equally to seizures of persons and to seizures of property." In that case the propriety of a warrantless arrest was at issue and the court explained its decision in part by reference to cases involving searches and seizure of property.

In the present case, of course, there was no review by a magistrate, since this was a warrantless arrest. Without

judging the propriety of proceeding without a warrant (see n. 2 ante) we do note the Supreme Court's expressed preference for the use of warrants, which as the court explained, "reduce[ ] the perception of unlawful or intrusive police conduct, by assuring 'the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.' *Gates* supra 462 U.S. at ——, 103 S.Ct. at 2331.

Although no review by a magistrate took place in this case, the principles enunciated in *Illinois v. Gates* clearly pertain to our decision.

■ Applying the test used by the *Gates* court,[3] we conclude that Mr. Sorrell's arrest was without probable cause.

The arresting officer explained at the suppression hearing that he learned of appellant's involvement in the robbery from the brother of appellant's co-defendant June O'Bryant who was being sought by the police.

Mr. O'Bryant's brother, Lewis, was picked up by the police and during questioning by them, said that his brother and appellant had committed the robbery in question. There is some question as to whether Lewis had been asked about the whereabouts of his brother by the police, but in any event, he did volunteer that his brother had committed the crime. Lewis offered to take the police to a place where his brother could be found, but when they arrived at the location his brother was not there. Lewis did tell the police that he knew where a gun could be found and the gun was found where Lewis had said it would be. In fact the police already had a search warrant for the house in which the gun was found, because they were looking for two chrome hand guns that had been used in a series of incidents.

Based on this information, the police proceeded to arrest Mr. Sorrell.

3. As to our retroactive application of *Gates* to the present case, see *United States v. Johnson,* supra.

Although the Supreme Court has abandoned the *Aguilar-Spinelli* "two-pronged test," we do not interpret their opinion in *Gates* as abrogating all the factors upon which that test was based. Indeed, the court was careful to explain that the veracity of the informant and the basis of his knowledge are still relevant considerations in determining whether probable cause exists.

There is no indication that the arresting officer had any reason to believe that Lewis O'Bryant was a truthful person. In fact at the time he made the statement, he was being questioned about his involvement in other crimes. There is no evidence that he had provided the police with accurate information in the past. In fact, his tip as to the whereabouts of his brother proved wrong.

■ The Commonwealth points to the discovery of the gun as corroboration of Lewis' claims. It is true that corroboration can enhance the reliability of an otherwise unknown informant. See *Illinois v. Gates*, supra. See also *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

In *Draper* and *Gates* the informer provided explicit details of activities that would be undertaken by certain persons in the future. The corroboration of these otherwise innocent facts, knowable only to one with close access to the suspects, gave the police reason to believe that the remainder of the tips—that criminal activity was about—were also reliable.

In contrast, part of Lewis O'Bryant's information was inaccurate. He did not provide detailed information, nor did he predict future events. Instead, he told the police of the presence of a gun in his mother's residence. Compare *Gates*, supra where the court noted that the anonymous letter contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties not easily predicted.

Nor did Lewis O'Bryant inform the officer of the basis of his knowledge. True, he was the brother of appellant

co-defendant (then a suspect) but how does that relate to his knowledge of Mr. Sorrell's activities? How does the discovery of a gun in his mother's residence suggest that he had reliable information about Mr. Sorrell's involvement? We think this very limited information—essentially only an allegation from an unproven source—was not sufficient to permit a common sense finding of probable cause to arrest appellant. We turn, then, to the question of whether certain statements made by appellant should have been suppressed.

The well established test to be employed in determining whether a statement should be suppressed as to fruit of an illegal arrest is:

> ... Whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

Appellant's first incriminating statement was made during an interview at police headquarters two hours after his arrest. A previous interview had ceased at 11:00 and at 11:30 appellant was again questioned. Under these circumstances, we believe the statement was directly related to the illegal arrest. See *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1979).

The second statement was made on January 9, following what was to have been a preliminary hearing. Appellant was in police custody, as he had been since his arrest. The police officer to whom the second statement was made testified at the suppression hearing that appellant volunteered the statement and in fact told the officer that he wished to speak to him.

In *Commonwealth v. Shaw*, 494 Pa. 364, 370, 431 A.2d 897, 900 (1981) our Supreme Court interpreted the earlier quoted language from *Wong Sun*, supra, as indicating that

"a defendant's exercise of his *own* free will in confessing will render his confession admissible, despite the fact that the confession would not have been obtained but for the illegal arrest." (Emphasis in original).

In *Commonwealth v. Bogan,* 482 Pa. 151, 158, 393 A.2d 424, 427 (1978), the court explained that *Wong Sun* provides that not all confessions obtained from an illegally arrested person are per se inadmissible at trial.

The court in *Bogan* observed:

The Court in *Wong Sun* noted that challenged evidence may be purged of the primary taint only if (1) it results from " 'an intervening independent act of a free will' ", ... or (2) if the connection between the arrest and the evidence has "become so attenuated as to dissipate the taint."

Id., 482 Pa. at 156, 393 A.2d at 427. (Citation omitted).

The test followed by the *Bogan* court involved the consideration of four factors: (1) whether *Miranda* warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. See also *In Interest of Brown,* 273 Pa.Super. 556, 417 A.2d 1188 (1980).

■ At the suppression hearing the officer to whom the second statement was made testified that appellant was advised of his *Miranda* rights prior to making the statement.

The statement was made more than three days after appellant's arrest, following his arraignment and the identification of him in a photo array.

Most importantly, the officer testified that he spoke with appellant on January 9 at Mr. Sorrell's request. See *Commonwealth v. Shaw,* supra as to the exercise of free will by appellant.

Although we have found appellant's arrest to have been without probable cause, we cannot find the circumstances surrounding it so flagrant a violation of our law as to

override the other aforementioned considerations which weigh heavily in favor of permitting the use of the January 9 statement as evidence at trial.

We affirm the denial of the suppression motion as to the January 9 statement and reverse as to the statement of January 5.

Judgment of sentence reversed and case remanded for proceedings consistent with this opinion. We relinquish jurisdiction.