483 A.2d 969

**COMMONWEALTH of Pennsylvania**

v.

**Wilbert DE SHIELDS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 5, 1984.

Filed Nov. 2, 1984.

Petition for Allowance of Appeal Denied March 25, 1985.

Lewis S. Small, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before ROWLEY, POPOVICH and CERCONE, JJ.:

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County following the appellant's, Wilbert DeShields', convictions of first degree murder and possession of an instrument of crime, generally. We affirm.

The facts, viewed in a light most favorable to the verdict-winner, reveal that at 12:45 a.m. on the 30th of October, 1980, Tyrone Johnson, Derrick Hart and Richard Moore (also known as "Fats") were engaged in a conversation at the corner of 32nd and Morris Streets in Philadelphia. Shortly thereafter the appellant joined the group and got into an argument with Moore. The appellant accused Moore of taking his drugs ("speed") and girl. Moore did not deny the accusations, and this caused the appellant to pull a knife and threaten Moore that "somebody's going to die tonight." Moore told the appellant to put the knife away and fight fair. A fight never materialized, but the appellant did put the knife away.

The four then walked down 32nd Street, with Johnson leaving the group at Arlington. The others continued on

'their way with Moore walking to the left of Hart and the appellant trailing the two. At 32nd and Monument Streets the appellant came up to Moore and said, "You took so much. Take this." Initially, Hart thought that the appellant had punched Moore somewhere on the top of the right shoulder. But, when he turned to see the appellant bring his arm down to his side, he noticed that the appellant "had a knife in his hand." Moore reacted by running into the street and yelling at the appellant that "he would kill him."

The appellant warned Hart that if he "snitched" he would be blamed for the stabbing. In point of fact, Hart did not report what he had seen to the police until the following day, after hearing of Moore's death.

At 12:45 a.m., James Roberts, who lived one block from the scene and knew both the appellant and the victim, heard a knock at his front door. Upon answering, Richard Moore asked Roberts to take him to the hospital because he had been stabbed. However, by the time Roberts got dressed Moore was nowhere to be found.

At 12:55 a.m., Officers Jordan and Edney received a radio bulletin of a stabbing at 3000 Euclid Street, which is approximately 3 blocks from 32nd and Monument. Upon arriving at the stated address, the police were told by a female that the male in her home had knocked on her door and "just fell in." As Officer Jordan attempted to open the front door, he was hampered by the fact that the victim was lying on his left side blocking the door with his feet. Officer Jordan finally gained entry and knelt down beside the victim and saw that he "was breathing rather erratically. He had a hard time breathing, had a lot of pain on his face[.]" The officer asked him who stabbed him. Before the victim lost consciousness, he stated, "Wilbert did it."

Thereafter, the victim was transported to the hospital and there he died as a result of a stab wound sustained on his right shoulder which severed a vein causing 3 pints of blood to collect in his chest cavity.

Within 20 minutes after information concerning the stabbing had been relayed over the radio, two Philadelphia police officers arrived on the scene with Samuel DeShields. One of the officers (Carter), upon viewing the individual, "stated ... that he knew this guy, and that Wilbert—this Wilbert was this man's brother, and that he lived in the 3200 block of Monument Street." Also, Samuel DeShields told the police that "he believed his brother Wilbert had stabbed Fats ...."

Once the police arrived at the appellant's residence, Officer Jordan knocked on the front door and stated, "This is the police." He then heard a female, later determined to be the appellant's mother, say, "Wilbert, it is the cops. Get out." Again, the officer knocked on the door, and, finding it ajar, stepped into a vestibule area that had another door which also was open and led into the living room. The officer yelled his identity a second time before appellant's mother came to ask what he wanted.

Officer Jordan informed the appellant's mother his purpose for being there. The appellant, thereafter, was advised of his rights and handcuffed. As he was being escorted out of the house, the appellant turned to Officer Jordan and said, "I beat one. I will beat this one, too."

Later on that same evening, as the appellant was being placed in an elevator to be taken from the basement to the homicide division at Eighth and Race Streets in Philadelphia, he turned to Officer Jordan and asked, "Is that guy dead?" The officer remarked, "Look, you don't have to say nothing until you talk to your lawyer." Nevertheless, the appellant turned to the officer and stated, "If the dude died, he deserved what he got."

Between 1:30–1:45 a.m., the appellant's invocation of his right to an attorney, coupled with what Detective James McCaffery felt was insufficient evidence, prompted his release. It was not until Derrick Hart reported to the police that he witnessed the stabbing that the appellant was rearrested and charged with the killing.

Following a trial by jury, post-verdict motions were filed in which the appellant questioned the competency of trial counsel. New counsel was appointed for the appellant and a hearing was conducted to review the merits of all of the appellant's claims. A court en banc ruled against the appellant, and, thereafter, a sentence of life imprisonment was issued for the stabbing death of Roger Moore and a concurrent sentence of 2½ to 5 years was imposed for the weapons offense. This appeal was then perfected.

The appellant now assails the admissibility of the victim's statement as a dying declaration and trial counsel's stewardship.

The appellant argues that there was no evidence to show that Roger Moore was *aware* of the severity of his wound, as evidenced by his threats of retaliation and running a substantial distance before collapsing. Thus, he continues, one of the criteria necessary to admit a statement as a dying declaration was missing and should have caused appellant's statement to be excluded at trial.

It is true that the admission of a hearsay statement as a dying declaration requires proof that at the time the declarant spoke, death was imminent, he had a sense of impending death and death did in fact ensue. *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128 (1980). However, as correctly observed by the trial court, in Pennsylvania a declarant's belief in his imminent demise may be inferred from surrounding circumstances, including the nature of the declarant's wounds. *Commonwealth v. Cooley*, 465 Pa. 35, 348 A.2d 103 (1975).

Instantly, the assistant medical examiner recounted that the victim had sustained a ¾ inch stab wound which severed a major vein behind the collarbone. This caused in excess of 3 pints of blood to drain into the decedent's chest cavity and hastened death. Couple the preceding with Officer Jordan's description of the victim grimacing and breathing with difficulty while lying prostrate on the floor of a stranger's house, and we have no difficulty in conclud-

ing that the evidence was sufficient to infer the declarant's *awareness* that he was near death so as to render his statement ("Wilbert did it") a dying declaration. *See Commonwealth v. Plubell,* 367 Pa. 452, 80 A.2d 825 (1951).

The last of the appellant's complaints concerns eight instances of trial counsel's alleged ineptness.

The first two points (A & B) in appellant's brief center upon his warrantless arrest and the resultant taint of his statements. In particular, the appellant argues that the police acted without probable cause. We disagree.

■ The police had been told by the victim that "Wilbert did it," just before he lost consciousness from a knife wound inflicted by his assailant. A short time and distance from the incident, the police detained a Samuel DeShields because they knew Samuel had a brother by the name of Wilbert. Upon questioning, Samuel told the police, "I think Wilbert's the one who did it." Hearing this, the police made their way to the appellant's residence. Once there, after identifying themselves, they heard a female say, "Wilbert, it is the cops. Get out."

Thereafter, the police effectuated a warrantless arrest of the appellant and advised him of his *Miranda* rights, to which he now protests was constitutionally infirm as having occurred without the benefit of probable cause.

It cannot be gainsaid that the police, prior to entering the appellant's home, had sufficient information to label the appellant a "suspect" in regard to the offense under investigation. Thus, when the police heard a warning to the appellant to flee the area, we find that "the facts and circumstances within the arresting officer[s'] knowledge and of which [they] had reasonably trustworthy information were sufficient to warrant ... prudent m[e]n in believing that [a] citizen had committed or was committing an offense." *Commonwealth v. Mackie,* 456 Pa. 372, 375, 320 A.2d 842, 843–844 (1974); *see also Commonwealth v. Bosurgi,* 411 Pa. 56, 67, 190 A.2d 304, 310 (1963) (" 'In dealing with probable cause ... as the very name implies, we deal with probabilities. These are not technical; they are the

factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' ").

Also, the ("exigent") circumstances which prefaced the appellant's arrest were consonant with those factors enumerated in *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), save for one not herein relevant, to render the actions of the police proper and legitimate in the face of information of an armed and dangerous individual.

We have no reason to hold that the police acted illegally in the case at bar. Rather, the initial suspicions culminated into full-blown probable cause once the police arrived at the appellant's premises and heard statements advising him to exit the residence because the police had arrived. *See Commonwealth v. Bosurgi, supra* (an arrest may be based upon hearsay evidence). For the authorities to have turned their backs would have been in derogation of their duty to uphold law and order, to investigate legitimate leads and react in a common sense fashion. *See Commonwealth v. Bosurgi, supra; cf. Commonwealth v. Dennis*, 289 Pa.Super. 305, 433 A.2d 79 (1981).

Accordingly, finding that the actions of the police were proper in arresting the appellant, we cannot deem trial counsel to be ineffective for failing to assault such conduct in the context of a motion to suppress. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977) (Counsel will not be deemed ineffective for failing to do a meritless act). Likewise, since our review of the record indicates that the appellant's incriminating statements were volunteered and not the product of custodial interrogation, *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), nor any intoxication, we hold trial counsel's actions proper in not attacking such statements at the suppression stage of the case.

Furthermore, finding that the other claims raised by the appellant in his brief (*see* Points C–H) to be equally meritless, we affirm the appellant's judgment of sentence.

CERCONE, J., files a dissenting opinion.

CERCONE, Judge, dissenting:

I must respectfully dissent as I find that the police were without probable cause to effect appellant's arrest, at his home, shortly after the stabbing of Richard Moore.

The existence of probable cause to arrest a suspect is dependent upon whether at the time of the arrest, the facts and circumstances within the knowledge of the police, or of which they have reasonably trustworthy information, would have caused a person of reasonable caution to believe that the suspected individual committed the criminal act. *Commonwealth v. Mack,* 313 Pa.Superior Ct. 372, 459 A.2d 1276 (1983). Each case must be reviewed in light of its own unique facts and circumstances. *Id.* In assessing the presence or absence of probable cause, we must remember that the police may rely upon information supplied by another person, where there is a substantial basis for crediting that source. *Commonwealth v. Rutigliano,* 310 Pa.Superior Ct. 364, 456 A.2d 654 (1983).

I believe that *Commonwealth v. Sorrell,* 319 Pa.Superior Ct. 103, 465 A.2d 1250 (1983), controls the disposition of this case. In *Sorrell,* a co-defendant's brother indicated to the police that the defendant was involved in the crime being investigated. As there was no indication as to why the police had reason to believe the informant, such information could not justify the defendant's arrest and therefore, statements arising from such illegal arrest had to be suppressed.

Similarly, here no reason was given as to why appellant's brother was thought to be trustworthy.[1] An informant's mere suspicion will not establish probable cause. *Commonwealth v. Allessie,* 267 Pa.Superior Ct. 334, 406 A.2d 1068 (1979). Without added information, the police could only rely upon the deceased's reference to "Wilbert." Admittedly, such dying declaration does greatly reduce the proportion of the populace who could have been responsible, however it still included too large a group to have reason-

[1] The brother was not a witness to the stabbing, did not claim that he had talked to appellant about the incident, and testimony was elicited that the brother had not seen appellant on the night in question.

ably concluded that any particular Wilbert was responsible. Descriptions applicable to large numbers of persons will not support a finding of probable cause. *Commonwealth v. Jackson,* 459 Pa. 669, 331 A.2d 189 (1975); *Commonwealth v. Bynum,* 265 Pa.Superior Ct. 13, 401 A.2d 776 (1979).

The unique facts of this case distinguish it from *Commonwealth v. Canady,* 500 Pa. 624, 459 A.2d 715 (1982). There, probable cause was established by the fact that, the defendant and the victim had been observed together late in the evening of the night when the victim disappeared, and by information of a prior incident between the victim and defendant. Whereas, in the case at hand, while appellant's brother referred to prior dealings between the victim and appellant, the police had no information, *at that time,* that appellant and the victim had been seen together on the night of the stabbing. Therefore, while the police were justified in suspecting appellant, that suspicion did not rise to the level of probable cause.[2] In fact the police even released him the following morning and only re-arrested him when an eyewitness came forward. Suspicion will not substitute for probable cause. *Commonwealth v. Kelly,* 487 Pa. 174, 409 A.2d 21 (1979).

Nor do I find that the warning, apparently issued by appellant's mother to appellant, "Wilbert, the cops, get out", supplies the missing fact needed to legally arrest appellant. Flight in conjunction with other circumstances may supply the authorities with probable cause. *Commonwealth v. Derrick,* 322 Pa.Superior Ct. 517, 469 A.2d 1111 (1983); *Commonwealth v. Gease,* 304 Pa.Superior Ct. 433, 450 A.2d 989 (1982). In the current case appellant did not attempt to flee and was arrested without incident. While there are situations where a third party's words or actions may obviate the need of the police to adhere to procedural niceties, *see Commonwealth v. Davis,* 331 Pa.Superior Ct.

---

**2.** I commend the police for their efficient investigation of this case and I believe the police were not "required to simply shrug their shoulders", *see Commonwealth v. Woodard,* 307 Pa.Superior Ct. 293, 453 A.2d 358 (1982), nonetheless I find the information available to them did not amount to probable cause to arrest.

285, 480 A.2d 1035 (1984) (knock and announce rule not strictly applied), I fail to see how appellant's mother's warnings could provide probable cause, especially when appellant did not follow it up.

While counsel did seek to suppress the incriminating statements on other basis, he did not allege the lack of probable cause. Since in our opinion such a challenge was of arguable merit, counsel should have proceeded on such basis. "Ordinarily, there is little tactical reason for not filing a suppression motion." *Commonwealth v. Felder,* 246 Pa.Superior Ct. 324, 337, 370 A.2d 1214, 1220 (1976). Therefore, I am constrained to dissent as I would remand for a suppression hearing on this matter.[3]

---

**3.** Much of this testimony discussed above is extracted from the trial counsel's second hand account of the police officers' knowledge and the officers' incident reports which were discussed at the evidentiary hearings. While the burden is upon the Commonwealth to establish probable cause, *Rutigliano, supra,* the Commonwealth is not put to that burden unless a defendant explicitly voices such a challenge. *Commonwealth v. Ryan,* 296 Pa.Superior Ct. 222, 442 A.2d 739 (1982). Since trial counsel did not put the prosecution to its test, it is possible that the police could have had additional information justifying appellant's arrest, therefore at this juncture a suppression hearing is warranted and not a new trial.