498 A.2d 389

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Lewis Michael MOLER, Appellant.**

Superior Court of Pennsylvania.

Argued May 15, 1985.

Filed Aug. 9, 1985.

Reargument Denied Oct. 8, 1985.

Paul R. Gettleman, Zelienople, for appellant.

Charles S. Hersh, Assistant District Attorney, Hermitage, for Commonwealth, appellee.

Before SPAETH, President Judge, ROWLEY and WIEAND, JJ.

WIEAND, Judge:

Lewis Moler entered negotiated pleas of guilty to charges of theft by receiving stolen property, solicitation to commit murder and attempted bribery of the District Attorney of Mercer County. After he had been sentenced to consecutive terms of imprisonment totalling not less than eleven years nor more than twenty years, appellant obtained new counsel and filed a petition to withdraw his pleas of guilty. He alleged that his pleas had been entered involuntarily and unknowingly and that his guilty plea counsel had been ineffective. A motion was also filed to modify the sentence. Both motions were consolidated for hearing, after which the trial court modified the sentence for solicitation to commit murder to not less than five nor more than ten years in prison, thus reducing the total sentence to not less than ten nor more than twenty years. All other relief was denied. Moler appealed. We affirm.

█ A petition to withdraw a plea of guilty after sentence has been imposed will not be allowed unless there is a showing of prejudice on the order of manifest injustice. *Commonwealth v. Shaffer*, 498 Pa. 342, 446 A.2d 591 (1982); *Commonwealth v. Starr*, 450 Pa. 485, 301 A.2d 592 (1973). This requires a review of all circumstances surrounding the entry of the plea. *Commonwealth v. Martinez*, 499 Pa. 417, 453 A.2d 940 (1982).

█ Appellant argues that his plea of guilty in the instant case was involuntary because it was entered to prevent prosecution of charges against his father. In this respect, it may be observed that appellant's father had suffered a heart attack and, as per finding of the post-trial hearing court, appellant had been informed that "all charges were being dropped against the defendant's father for medical reasons." (Finding of fact No. 14). The court further found:

11. Although the defendant would not have entered guilty pleas if the charges had not been dismissed against his father, this was not the only precipitating reason of the defendant for entering guilty pleas. The defendant also entered the guilty pleas because he wanted to get the matter over with, he was satisfied with the Judge assigned to his case, and that he was concerned as to the safety of his family if it became known that he was cooperating with authorities while in the Mercer County Jail and he acknowledged that he was guilty.

These findings are supported by evidence presented at the post-trial hearing and, therefore, are binding upon a reviewing court. *Commonwealth v. Byrd,* 493 Pa. 178, 183, 425 A.2d 722, 724 (1981); *Commonwealth v. Mack,* 313 Pa.Super. 372, 376, 459 A.2d 1276, 1278 (1983); *Commonwealth v. Johnson,* 310 Pa.Super. 385, 391, 456 A.2d 988, 991 (1983). During the guilty plea colloquy, moreover, appellant had assured the court that his pleas were being entered voluntarily. This appears at page 41 of the guilty plea record as follows:

THE COURT: In your mind, have [sic] there been any threat against you of any type to make you come here today to enter these guilty pleas?

MR. MOLER: No, sir.

THE COURT: Are you entering these of your own free will and accord?

MR. MOLER: Yes, sir.

THE COURT: Are there any questions on anything that you have said or that I've said to you or your attorney

has said that you want cleared up before you enter these guilty pleas?

MR. MOLER: No, sir.

It seems clear, therefore, that neither appellant's concern for charges pending against his father nor the District Attorney's decision to drop them rendered appellant's guilty pleas involuntary. Neither suggested prejudice on the order of manifest injustice. The trial court correctly refused to allow appellant to withdraw his pleas of guilty for this reason.

Appellant also contends that his guilty pleas were invalid because he did not knowingly waive his right to trial by jury. The record colloquy, he contends, failed to include an instruction that he would be able to participate in the selection of the jury. The guilty plea court instructed appellant in part as follows:

You should understand that you are presumed to be innocent throughout all of this as you sit there right now, as innocent as any person in this room with those charges, and only after a full trial after twelve jurors are selected from all walks of life of Mercer County and are duly sworn and all the evidence is received and the attorneys are given the opportunity to argue their case to the jury, and the Judge charges the jury and they retire to deliberate, when the last of the twelve jurors says guilty when they come in an[d] announce their verdict in open court, then and only then are you guilty and not at any time to that. So you have what is called a presumption of innocence, and it's up to the government to prove beyond a reasonable doubt each and every element of these crimes that I am going to give to you if they expect to get a conviction. If there is a reasonable doubt as to any element of any crime, then the jury is obligated to find you not guilty of that charge. If you elect to go to trial, that is, plead not guilty, you have an absolute right to a jury trial, and you have an absolute right to take the stand and tell your side of the story, and that cannot be taken away from you....

Appellant's counsel, moreover, had informed appellant prior to his tendering of guilty pleas that he had the right to address questions to the jury during voir dire and to challenge jurors for cause depending upon their answers. Appellant had also been instructed by trial counsel that he had the right to exercise seven peremptory challenges. (Post-trial hearing court finding No. 13).

Following examination of the total circumstances, as mandated by the Supreme Court, the conclusion is inescapable that appellant's guilty pleas were entered knowingly, intelligently and voluntarily. There were no defects in the guilty plea proceedings of sufficient magnitude to warrant a post-sentencing withdrawal of appellant's pleas. See: *Commonwealth v. Klinger*, 323 Pa.Super. 181, 470 A.2d 540 (1983); *Commonwealth v. Harris*, 311 Pa.Super. 216, 457 A.2d 572 (1983); *Commonwealth v. Herberg*, 306 Pa. Super. 245, 452 A.2d 536 (1982). See also: *Commonwealth v. Campbell*, 309 Pa.Super. 214, 455 A.2d 126 (1983). Even now, appellant does not aver his innocence.

During the guilty plea colloquy pertaining to the charge of attempted bribery of the District Attorney, Moler explained to the court that a person named Charles, who in reality was an undercover police officer, had told him he could take care of his other problems. The following dialogue then occured:

"THE COURT: Did you know what he meant when he said we'll take care of the problem that you had?

"MR. MOLER: Not yet. Okay, then we went from the truckstop,—oh, he spoke that he had a guy from the District Attorney's Office that would take money to sabotage the case, or take money for Judge Acker, yourself and to retaliate the case to return it through trial, but have mistakes to make it so that it would be thrown out of Court. And this was in the car, he told me on the way over. He went up,—I wouldn't go into Pennsylvania. I stopped on the Pennsylvania line and told him I wouldn't go into Pennsylvania, and he walked up to the car about a hundred yards into Pennsylvania and walked back to my car and we

spoke that the guy wanted a thousand, he wanted eight thousand in three different payments at different times of trial.

"THE COURT: Okay.

"MR. MOLER: But he wouldn't come back to the car. So he walked back up to talk to him some more and come back and asked if it was all right that this Charlie guy come back to my car. I pulled my car off approximately forty yards and my father walked back to the car, and then they both came back to my car and my father handed me an envelope and I handed it to the Charlie guy.

"THE COURT: Did you know what was in the envelope?

"MR. MOLER: Money.

"THE COURT: You walked across the state line into Pennsylvania.

"MR. MOLER: Drove.

"THE COURT: Drove?

"MR. MOLER: Correct.

"THE COURT: Uh-huh.

"MR. MOLER: I was probably thirty yards into Pennsylvania.

"THE COURT: What was in that envelope?

"MR. MOLER: A thousand dollars, I think. Yes.

"THE COURT: Did you see that before you handed it over. Did you look into it, or—

"MR. MOLER: He had the money in his hand and I assumed the money was definitely in the envelope.

"THE COURT: And you could feel money?

"MR. MOLER: Sure.

"THE COURT: And knew it was money you were passing?

"MR. MOLER: Yeah.

"THE COURT: And at the time that you passed it then, what did you think you were buying?

"MR. MOLER: That he was going to sabotage my case somehow.

"THE COURT: And did you think it was going to go to trial and that errors would be made in the course of the trial to wreck the case?

"MR. MOLER: Correct.

"THE COURT: That was your thought of how it was going to go?

"MR. MOLER: Yes.

"THE COURT: Now, was that supposed to be the first payment of three payments?

"MR. MOLER: Yes, sir.

"THE COURT: Was that Eight Thousand Dollar deal still on as far as you knew?

"MR. MOLER: Total. Yes, sir.

"THE COURT: This was but one thousand?

"MR. MOLER: Yes, sir.

"THE COURT: Wasn't it that you were to pay two thousand dollars?

"MR. MOLER: Yes, sir. That's all the money we had.

"THE COURT: Did you tell him that?

"MR. MOLER: Uh—I can't say that I told him because I wasn't in the car and I never spoke with the man. I think I said seven words to him.

"THE COURT: And then they arrested you immediately upon your passing the money over?

"MR. MOLER: He went back to his car and flashed his lights on the car, and in the meantime I was backing away and getting ready to go and U-turn in the interstate and traffic was a little moderate and a car came up from behind and two guys walked up to the car and told us to get out of the car with shotguns and two police cars come to the middle of the road and stopped, marked state highway patrol cars and Officer Grolemund came out of the weeds beside the car.

"THE COURT: All right. Let's go back to make sure we have all the elements. You did in fact offer and did in fact deliver a thousand dollars to a person with the belief at least that you were going to be able to affect the case in such a manner that you would not be convicted?

"MR. MOLER: Correct.

"THE COURT: Now, did you feel that you were buying out both of these charges or all?

"MR. MOLER: All of the charges.

"THE COURT: Against you to that point?

"MR. MOLER: Yes, sir. All the charges.

"THE COURT: All right. Did you have any reason to believe that this was going to work?

"MR. MOLER: I wasn't sure. I just, I don't know. I watch TV.

"THE COURT: Did anybody represent to you, did anybody from the existing District Attorney's Office or any of the police other than these undercover officers represent to you that they had an entree or an entry into the Courts that they could pull this off?

"MR. MOLER: Just from his words, Charles Toth.

"THE COURT: Just the undercover agent?

"MR. MOLER: Charles, and then this Jim guy.

"THE COURT: All right. Questions by either counsel or both?

"MR. McCANN: No, your Honor.

"MR. LAMANCUSA: I have nothing, your Honor."

Appellant now argues that his guilty plea counsel rendered ineffective assistance because he failed to request the trial judge and the prosecuting attorney, an assistant district attorney, to recuse themselves. The trial court found that such a request would have been meritless and that counsel should not be deemed ineffective for failing to make such a useless motion. We agree.

■ The District Attorney, who had been the object of the attempted bribe, did not participate personally in the prosecution of criminal charges against appellant. The prosecution was handled exclusively by an assistant district attorney. Even if there were reason for disqualification of the District Attorney, the law is clear that disqualification of his entire staff was not required. *Commonwealth v. Miller*, 281 Pa.Super. 392, 422 A.2d 525 (1980). Appellant has failed to show that he was prejudiced in any way by virtue of the fact that the prosecution was handled by an assistant district attorney. The record does not even imply that the prosecuting assistant district attorney failed to perform his duties impartially in keeping with professional, prosecution standards.

Moreover and in any event, appellant did not create a conflict of interest requiring the District Attorney to recuse himself from his role as prosecutor merely because appellant believed—and attempted to act on his belief—that the District Attorney could be bribed. Any rule requiring recusal under such circumstances would contain the potential for havoc in cases being prosecuted by District Attorneys in this Commonwealth. Where, as here, a District Attorney's role in the prosecution function is not impaired by a defendant's attempt to bribe him, there is no necessity for recusal. See and compare: *Commonwealth v. Stoner*, 264 Pa.Super. 136, 399 A.2d 703 (1979) (no conflict where prosecuting attorney represented victim of embezzlement in civil action against same defendant).

■ Similarly, appellant's testimony that he subjectively believed that some of the money paid would reach the trial judge did not create a conflict of interest requiring the judge to recuse himself from accepting appellant's guilty pleas or from imposing sentence. In *Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727 (1983), the trial judge, as district attorney, had previously prosecuted the defendant on unrelated charges. The Supreme Court held that "[a]bsent some showing of prejudgment or bias we will not assume a trial court would not be able to provide a defend-

ant a fair trial based solely on prior prosecutorial participation." *Id.*, 501 Pa. at 22, 459 A.2d at 731. See also: *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976) (recusal unnecessary where trial judge presiding over homicide trial had been mourner at victim's funeral); *Commonwealth v. Schwartz*, 178 Pa.Super. 434, 115 A.2d 826 (1955) (recusal unnecessary in bribery trial where trial judge had been informed pre-trial by District Attorney that investigation of bribery of public officials was underway). We reject emphatically the per se rule advocated by appellant that a judge accepting a guilty plea can be compelled to recuse himself or herself whenever a defendant, during the plea colloquy, articulates a subjective belief that the judge is corrupt or otherwise unworthy of hearing the case. The subjective belief of the defendant, without more, that his criminal charges could be fixed by bribing the trial judge, does not require recusal of the judge.

The order refusing to allow appellant to withdraw his pleas of guilty is affirmed.